Rodrigo Hernandez
V54637 B3-143
Salinas Valley State Prison
P.O. Box 1050 (3160 s. Hwy 101)
Soledad, Ca. 93960-1050

United States District Court
For the Northern District
U.S. Courthouse
450 Golden Gate Avenue
San Francisco, Ca. 94102-3483



STATE PRISON
GENERATED MAIL

Rodrigo Vasquez Hernandez
V54637 B3-143
Salinas Valley State Prison
31625 Highway 101
Soledad, Ca 93960-1050

Legal Mail

RECEIVED

FILED

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

United States District Court
for the Northern District
U.S. Courthouse

450 Golden Gate Avenue
San Francisco, Ca. 94102-348.

530 new

1  **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2  Name _Hernandez    Rodrigo    V._

   (Last)           (First)         (Initial)

3  Prisoner Number _V 54637,   B3-143_

4  Institutional Address _Salinas Valley State Prison_

5  _31625 Hwy 101, Soledad, Ca. 93960_

6

7  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**

8  _Rodrigo Vasquez Hernandez_          )

   (Enter the full name of plaintiff in this action.)

9                                        )   **CV  08  2892**

                                             Case No. _____

10                    vs.                  )   (To be provided by the clerk of court)

11 _Warden, M.S. Evans_                   )

   _Salinas Valley State Prison;_         )   **PETITION FOR A WRIT**
                                             **OF HABEAS CORPUS** TEH

12 _Attorney General_                     )

13 _State of California_                  )

                                         ) E-filing

14 (Enter the full name of respondent(s) or jailor in this action)

15

16                Read Comments Carefully Before Filling In

17 When and Where to File

18        You should file in the Northern District if you were convicted and sentenced in one of these

19 counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21 this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were not convicted and sentenced in

24 one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 District Court for the district in which the state court that convicted and sentenced you is located. If

26 you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 your petition will likely be transferred to the district court for the district that includes the institution

28 where you are confined. Habeas L.R. 2254-3(b).

1 | Who to Name as Respondent

2 |       You must name the person in whose actual custody you are. This usually means the Warden or

3 | jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4 | you are imprisoned or by whom you were convicted and sentenced. These are not proper

5 | respondents.

6 |       If you are not presently in custody pursuant to the state judgment against which you seek relief

7 | but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8 | custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9 | was entered.

10 | A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11 |     1. What sentence are you challenging in this petition?

12 |        (a)   Name and location of court that imposed sentence (for example; Alameda

13 |             County Superior Court, Oakland):

14 | <u>Santa Clara County Superior Court</u>    <u>San Jose, Ca.</u>

15 |            Court                    Location

16 |        (b)   Case number, if known <u>CC 315300</u>

17 |        (c)   Date and terms of sentence <u>September 6, 2004 - 45 years to Life</u>

18 |        (d)   Are you now in custody serving this term? (Custody means being in jail, on

19 |             parole or probation, etc.)      Yes <u>✓</u>    No _____

20 |             Where?

21 |             Name of Institution: <u>Salinas Valley State Prison</u>

22 |             Address: <u>31625 Hwy 101, Soledad, Ca. 93960-1050</u>

23 |     2. For what crime were you given this sentence? (If your petition challenges a sentence for

24 | more than one crime, list each crime separately using Penal Code numbers if known. If you are

25 | challenging more than one sentence, you should file a different petition for each sentence.)

26 | (1) P.C section 269        (4). P.C. section 288.2 (A) - stayed.

27 | (2) P.C section 269        (5) P.C. section 311.4 (c)

28 | (3) P.C section 269

PET. FOR WRIT OF HAB. CORPUS    - 2 -

1    3.  Did you have any of the following?

2         Arraignment:                        Yes ✓         No _____

3         Preliminary Hearing:                Yes ✓         No _____

4         Motion to Suppress:                 Yes ✓         No _____

5    4.  How did you plead?

6         Guilty _____    Not Guilty ✓    Nolo Contendere _____

7         Any other plea (specify) _____ n/a _____

8    5.  If you went to trial, what kind of trial did you have?

9         Jury ✓       Judge alone _____   Judge alone on a transcript _____

10   6.  Did you testify at your trial?              Yes _____    No ✓

11   7.  Did you have an attorney at the following proceedings:

12        (a)    Arraignment                    Yes ✓         No _____

13        (b)    Preliminary hearing            Yes ✓         No _____

14        (c)    Time of plea                   Yes ✓         No _____

15        (d)    Trial                          Yes ✓         No _____

16        (e)    Sentencing                     Yes ✓         No _____

17        (f)    Appeal                         Yes ✓         No _____

18        (g)    Other post-conviction proceeding   Yes _____   No ✓

19   8.  Did you appeal your conviction?            Yes ✓    No _____

20        (a)    If you did, to what court(s) did you appeal?

21               Court of Appeal Santa Clare County Yes ✓   No _____
                                       stayed (4) 286.2(A)
22               Year: 2006        Result: all other charges affirmed

23               Supreme Court of California    Yes ✓   No _____
                                       Denied pending u.s. Supreme Court
24               Year: 2007        Result: Cunningham V California, No. 05-6551

25               Any other court u.s. Supreme Court Yes ✓   No _____

26               Year: 2007        Result: writ of certiorari denied.

27

28        (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS          - 3 -

|   |   |   |
|---|---|---|

1    petition?                          Yes ✓        No____

2    (c)    Was there an opinion?        Yes ____     No ✓

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                        Yes ____     No ✓

5          If you did, give the name of the court and the result:

6          _____

7          _____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?        Yes ✓        No____

10          [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11    challenged the same conviction you are challenging now and if that petition was denied or dismissed

12    with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13    for an order authorizing the district court to consider this petition. You may not file a second or

14    subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15    U.S.C. §§ 2244(b).]

16          (a)    If you sought relief in any proceeding other than an appeal, answer the following

17                questions for each proceeding. Attach extra paper if you need more space.

18          I.    Name of Court: _Superior Court of County of Santa Clara_

19                Type of Proceeding: _Habeas Corpus petition_

20                Grounds raised (Be brief but specific):

21                a. _Ineffective Assistance of Counsel_

22                b. _Denial of Family Visit_

23                c. _____

24                d. _(see Attachment C)_

25                Result: _denied_                Date of Result: _2007_

26          II.    Name of Court: _Superior Court of California_

27                Type of Proceeding: _Habeas Corpus Petition_

28                Grounds raised (Be brief but specific):

(see Attachment B)

a. Ineffective Assistance of Counsel

b. Trial Court Errs - See Court Transcript.

c. Knock · Notice Violation — See Note · Attachment B

d. Officers exceed Scope of Search Warrant

Result: denied                          Date of Result: 2007

III.    Name of Court: N/a

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result: _____ Date of Result: _____

IV.    Name of Court: n/a

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result: _____ Date of Result: _____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No ✓

Name and location of court: _____

**B. GROUNDS FOR RELIEF**

State briefly every reason that you believe you are being confined unlawfully. Give facts to

support each claim. For example, what legal right or privilege were you denied? What happened?

Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1  need more space.  Answer the same questions for each claim.

2      [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3  petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One: Violated U.S. Constitution - Fourth, Fifth, Sixth

6  and Fourteeth; Sentence Illegal and unconstitution

7  Supporting Facts:  see  Attachment  A

8

9

10

11  Claim Two: Prosecution misconduct and Numerous

12  "Harmless Errs"

13  Supporting Facts:  see  Attach ment  A

14

15

16

17  Claim Three: Trial Judge errs. allowing uncharge sexual

18  misconduct and too remote in time propensity evidence.

19  Supporting Facts: See Attachment  A

20

21

22

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25

26

27

28

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:

4    _Cunningham V California_ (2007) 126 S.ct 1329 ; Brown V Myers

5    (9th Cir 1998) 137, F.3d. 1154 ; Deck V MO (2005) 125, S.ct 2007,

6    2013, 2015 ; U.S V. Weidul(1st Cir 2003) 325 F.3d 50, 54 ; U.S. V

     Canon (4th Cir 2001) 264, F.3d 875, 879-80

7    Do you have an attorney for this petition?            Yes_____    No_√_

8    If you do, give the name and address of your attorney:

9    _____

10        WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on _May 26, 2008_       _____

14             Date               Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS     - 7 -

SALINAS VALLEY STATE PRISON

ATTACHMENT



NOTE:

I believe the Flesh Complaint rule was violate whereasthe Initial complaint was NOT spontaneous nor voluntary nor done by the allege victum. (See report to teacher May 4, 2002) The tainted Interview by Officer Juan Serrano on the allege victum, May 8, 2002, was induce and very leading. The allege crimes were in fact, suggested to the victum by the Officer with the victum first denying any sexual assault had happen (See Police Report by Officer Juan Serrano, May 8, 2002)

The time limit had expired for a flesh Complaint to be classified as "Flesh" The initial to authorities was May 4,th 2002. The Felony Complaint and Warrant for the arrest of defendant was June 6th 2003, 13 months after initial complaint to authorities and over the One year limit to be classified as "Flesh".

Violation of Hearsay evident by witnesses not present when victum declared molestation occure during a game and told by third handed down tale, party. Victum having family problems and lacked attention and comform at time of non-voluntary declaration.

Address _Salinas Valley State Prison (B2-146)_

_P.O. Box 1050_

_Soledad, Ca. 93960-1050_

CDC or ID Number    _V54637_

Court of Appeal - STATE OF CALIFORNIA
County of Santa Clara
(Court)

**PETITION FOR WRIT OF HABEAS CORPUS**

_Rodrigo Hernandez_
Petitioner

vs.

No. _____

_(To be supplied by the Clerk of the Court)_

_M.S. Evans Warden - State of California_
Respondent

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(e)

American LegalNet, Inc.
www.USCourtForms.com

MC–275

**This petition concerns:**

- ☑ A conviction
- ☐ Parole
- ☑ A sentence
- ☐ Credits
- ☐ Jail or prison conditions
- ☐ Prison discipline
- ☐ Other *(specify):* R

1. Your name: Rodrigo Vasquez Hernandez

2. Where are you incarcerated? Salinas Valley State Prison

3. Why are you in custody? ☑ Criminal Conviction   ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Aggravated Sexual Assault of a minor under 14 and 10 years younger than defendant. Distrubution of Sexual Material

   b. Penal or other code sections: P.C section 269(261(a)(2); 289(a) ; 288(a)); 288.2(a); 3114(c)

   c. Name and location of sentencing or committing court: Superior Court of Santa Clara City of San Jose

   d. Case number: CC 315300

   e. Date convicted or committed: June 30, 2004

   f. Date sentenced: September 9, 2004

   g. Length of sentence: 45 years to life

   h. When do you expect to be released? December 24, 2036

   i. Were you represented by counsel in the trial court? ☐ Yes. ☑ No. If yes, state the attorney's name and address:

   Traci Owens, Public Defender, 120 W. mission
   San Jose, C. 95110

4. What was the LAST plea you entered? *(check one)*

   ☑ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?

   ☑ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

**6.** GROUNDS FOR RELIEF                                                          MC-275

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Pursuant to the recent U.S. Supreme Court decision in Cunningham vs California, Petitioner's sentence was illegal and unconstitution and new sentence is Warranted.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

On September 9, 2004, Petitioner received three 15 to life sentences, consecutive totaling 45 to life. In sentencing Petitioner, the Judge considered facts not submitted to a jury and proven beyond a reasonable doubt. In 2004, the U.S. Supreme Court in BLAKELY VS WASHINGTON, ruled that such a practice violated the Sixth Amendment Right to a TRIAL BY JURY. In 2007, the U.S. Supreme Court in CUNNINGHAM VS. CALIFORNIA ruled that BLAKELY applied in California as well, which was contrary to the California Supreme Court decision in BLACK in 2005. In 2006, on Petition for Review, the California Supreme Court denied Petition pending CUNNINGHAM decision. Pursuant to the U.S. Supreme Court decision in CUNNINGHAM and BLAKELY, Petitioner's Sentence was clearly illegal and unconstitutional and must be corrected forwith. An Order to Show Cause should be issued along with appointed of Counsel.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

CUNNINGHAM VS CALIFORNIA (2007) 126 S. Ct 1329; 164 L.Ed. 2d.

BLAKELY VS. WASHINGTON (2004) 542 U.S. 296

U.S Constitution - Sixth Amendment - Right to a Trial by Jury

U.S. Constitution - Fourteeth Amendment - Equal Protection

7. Ground 2 or Ground __2__ (if applicable):                                    MC-275

Errs by Trial Court Judge and prosecution influence jury to convict defendant. Court of Appeal erred by holding numerous errs were "harmless"

a. Supporting facts:

Trial Court allowed testimony of propensity witnesses were so remote in time (30 years), so inflammatory, cause confusing, had no probative value, consumed a great deal of time it is logically assume the jury did in fact utilize All witnesses's testimony. Combined with prosecution errs, stating that "Victum had testified to details about the appearance of [petitioner's] car and residence, particular his bedroom" and prosecution direct comment on the "defendant's failure to testify and explain why.... that is a direct comment on [defendant] failure to take the stand", as Defense objection that really gives cause for a mistrial (Fifth Amendment; griffin err) Trial Jury overruled the Object and denial of motion for a mistrial was in err.

b. Supporting cases, rules, or other authority:

US vs Voroudakis, (2001) 233 F.3d. 113, 126;
US. vs Ewolt (1994) 7 Cal 4th 380, 405
US. Constitution — Fifth Amendment
U.S. Constitution — Sixth Amendment
U.S. Constitution — Fourteeth Amendment
Griffin vs California (1965) 380 U.S. 609 [14 L.Ed. 2d 106]

MC–275

8. Did you appeal from the conviction, sentence, or commitment? ☑ Yes. ☐ No. If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
Court of Appeal, Sixth Appellate District

b. Result Stay P.C. Section 288.2                    c. Date of decision: June 14, 2004

d. Case number or citation of opinion, if known: H 0 2 7 9 5 5

e. Issues raised: (1) Court sentencing err

(2) Court admitting propensity witnesses err

(3) Prosecution misconduct during closing arguements on defendant not testifing

f. Were you represented by counsel on appeal? ☑ Yes. ☐ No. If yes, state the attorney's name and address, if known:
LORi Quick, Sixth Appellate program, 100 N. Winchester Blvd, Suite 310, Santa Clara
95051

9. Did you seek review in the California Supreme Court? ☑ Yes ☐ No. If yes, give the following information:

a. Result denial pending Cumminghtam decision   b. Date of decision: August 23, 2006

c. Case number or citation of opinion, if known: S145236

d. Issues raised: (1) Consecutive sentenence Court Judge err

(2) Court err. by admitting uncharge misconduct of defendant 30 yrs. pior.

(3) Prosecution misconduct on jury closing argument on defendant failure to testify

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal,
explain why the claim was not made on appeal:
New issue based on U.S. Supreme Court decision – watershed
rule of Criminal Procedure

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust
administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975)
52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such
review:
N/A

b. Did you seek the highest level of administrative review available? ☐ Yes. ☑ No.
*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  ☑ Yes. If yes, continue with number 13.   ☐ No. If no, skip to number 16.

13. a.  (1) Name of court: Superior Court, County of Santa Clara - Family Division

    (2) Nature of proceeding (for example, "habeas corpus petition"): Habeas Corpus Petition

    (3) Issues raised: (a) Family Visits

      (b) Transfer to Federal Institution,

    (4) Result (Attach order or explain why unavailable): Denial

    (5) Date of decision: March 29, 2007

  b.  (1) Name of court: Superior Court, County of Santa Clara

    (2) Nature of proceeding: Habeas Corpus petition

    (3) Issues raised: (a) Ineffective Counsel

      (b) Illegal Knock-Announce entry, evidence taken not defendant purchase 2003

    (4) Result (Attach order or explain why unavailable): Deny - unable to locate

    (5) Date of decision: April 2007 (guesta mation)

  c.  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
    n/a

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
    Recent U.S. Supreme Court Decision

16. Are you     ntly represented by counsel?  ☐ Yes.  ☑ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?  ☑ Yes.  ☐ No. If yes, explain:
    Appeal Motion to Supress (1538.5) and Ineffective Assistant of Counsel

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
    n/a

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: June 11, 2007

(SIGNATURE OF PETITIONER)

# TABLE OF AUTHORITIES
## CASES

Alvarez v Boyd, (7th Cir 2000), 225 F.3d 820, 824

• Appendi v New Jersey (2000), 530 U.S. 466

Bates v Bell (6th Cir 2005) 402 F.3d 635, 649

Bean v Calderon (9th Cir 1998) 163 F.3d 1073

• Blakey v Washington (2004) 542 U.S. 296 [159 L.Ed 2d 403]

Brown v Borg (9th Cir 1991) 951 F.2d 1011

Chapman v California (1967) 386 U.S. 18 ·

Cooper v Oklahoma (1996) 517 U.S. 348

• Cunningham v California (2007) 126 S.Ct 1329 164 L.Ed 2d

Griffin v California (1965) 380 U.S. 609 [14 L.Ed.2d 106]

Howard v Walker (2nd Cir 2005), 406 F.3 114, 123

Jammal v Van de Kamp (9th Cir 1991) 926 F.2d 918

Maupin v Widling (1987) 192 Cal. App 3d. 568

McKinney v Rees (9th Cir 1993) 993 F.2d 1378

Medina v California (1992) 505 U.S. 437

Michelson v U.S. (1948) 335 U.S. 469 [93 L.Ed. 168]

Miller v Pate (1967) 386 U.S. 1

Panzavecchia v Wainwright (5th Cir 1981) Supra 658
        F.2d. 337

People v Berryman (1993) 6 Cal 4th 1048

People v Bradford (1997) 15 Cal 4th 1229

People v Brown (2003) 31 Cal 4th 518

People v Burns (1987) 189 Cal App 3d 734

People v Espinoza (1992) 3 Cal. 4th 806

People v Ewoldt (1994) 7 Cal. 4th 386

# TABLE OF AUTHORITIES        (CONTINUED)

People v Falsetta (1999) 21 Cal. 4th 903

People v Fitch (1997) 55 Cal App 4th 172

People v Frye (1998) 18 Cal App 4th 894

People v Fuentes (1986) 183 Cal App 3d 444

People v Harris (1998) 60 Cal 4d 727

People v Harris (1989) 47 Cal 3d 1047

People v Hovey (1988) 44 Cal 3d 543

People v Hughes (2002) 27 Cal 4d 287

People v Linkenauger (1995) 32 Cal App 4th 1603

People v Marshall (1996) 13 Cal App 4th @ p 831

People v Medina (1995) 11 Cal 4th 694

People v Morrison (2004) 34 Cal. 4th 698

People v Murtishaw (1981) 29 Cal 3rd 733

People v Roybal (1998) 19 Cal 4th 481

People v SaKarias (2000) 22 Cal 4th 596

People v Silva (2001) 25 Cal 4th 345

People v Strickland (1974) 11 Cal 3d 946

People v Tassel (1984) 36 Cal 3d 77

People v Thomas (1978) 20 Cal 3d 45

People v Watson (1956) 46 Cal 2d 818

Spencer v Texas (1967) 385 U.S. 554 [17 L. Ed 2d 606]

Taylor v Ky (1978) 436. U.S. 478, 488 n 15

US v Canales (5th Cir 1984) 744 f. 2d. 413, 430

U.S. v Cotnam (7th Cir 1996) 88 F.3d. 487, 500

U.S. v Earle (D.C. Cir 2004) 375. F.3d. 1159, 1165-66

# TABLE OF AUTHORITIES (CONTINUED)

U.S. v Hands. (11th Cir 1999) 184. F.3d. 1322
U.S v. Jenkins, (6th Cir 2003), 345 F. 3d 928, 941
U.S v Morley (3rd Cir. 1999) 199 F.3d 129, 140
U.S v Rivera (10th Cir. 1990) 900 F.2d 1462, 1469
U.S. v Stewart (6th Cir 2002) 308 F.3d 494; 521
U.S.v Trarwater, 308 F.3d 494; 521 (6th Cir 2002)
US v Wallace (9th Cir. 1988) 848 F.2d 1464, 1475

## CONSTITUTIONS

United States Constitution
    Fifth Amendment
  · Sixth Amendment
  · Fourteenth Amendment

## STATUTES

Evidence Code
        Section 352
        Section 1108
        Section 1108, subdivision (a)
Penal Code
        Section 220
  ◦ Section 261
  · Section 261, subdivision (a)(2)
        Section 262
        Section 264.1 subdivision (b)

· TABLE OF AUTHORITIES (CONTINUE)

PENAL Codes
Section 269
Section 269 subdivision (b)
Section 286
Section 286 subdivision (K)
Section 288 a
Section 288.2 subdivision (a)
Section 289 subdivision (a)
Section 311.4 subdivision (c)
Section 352
Section 654
Section 667.6
Section 667.6 subdivision (d)
Section 669.
Section 1108
Section 2933.1
Section 1170.1 subdivision (a)

MISCELLANEOUS

California Rules of Court
    Rule 4.421
    Rule 28 (b)(1)

1  RODRIGO VASQUEZ HERNANDEZ, VS4637
2  Salinas Valley State Prison
3  P.O. Box 1050
4  Soledad, Ca. 93960-1050
5  Attorney Pro Se

6
7          COURT OF APPEAL
8        SIXTH APPALLATE DISTRICT
9    COUNTY OF SANTA CLARA, STATE OF CALIFORNIA

10
11 | In re:                          | NO.
   |    Rodrigo Vasquez Hernandez    | Petition For Writ of Habeas
12 |                                 | Corpus And Memorandum Of
   | On: Habeas Corpus               | Points And Authorities in
13 |                                 | Support   THERE OF

14                   I

15

16

17        INTRODUCTION

18

19      1. On October 17, 2003, an information
20 was filed in Santa Clara County Superior Court charging
21 petitioner in Count One with aggravated sexual assault
22 of a child under 14 and 10 or more years younger than the
23 defendant (Penal Code section 269), specifically, rape within
24 of Penal Code section 261, subdivision (a)(2); in Count
25 two with a violation of Penal Code section 269,
26 specifically sexual penetration by a foreign object
27
28                   1

1  (Penal Code section 289, subd. (a); and also Count Three
2  with a violation of Penal Code section 269, specifically oral
3  copulation (Penal Code section. 288a). He was further
4  charged in Count Four with distributing or exhibiting
5  harmful matter to a minor (Penal Code section 288.2 subd (a));
6  and Count Five with employing, persuading, or inducting a
7  minor's involvement in modeling, posing, or performing sexual
8  conduct (Penal Code section 311.4, subd. (c). CT 199-203

9         2. On September 9, 2004, petitioner was sentenced
10  to serve consecutive terms of 15 to life for each of Counts
11  one, Two, and Three; the midterm of two years for Count Four;
12  and one-third the midterm (eight months) for Count Five.
13  His total prison commitment was 45 years to life consecutive
14  to two years and eight months. He was ordered to pay a
15  10,000 restitution fine as well as other fines and fees. CT393-398

16         3. On June 14, 2006, on his direct appeal to the
17  California Court of Appeal, Sixth Appellate District, order.
18  the judgement be modified to stay the two-year sentence
19  on Count Four (Sixth Appellate District case No. #O27955.)
20  Sixth Appellate Court further concluded that the
21  trial Court err by allowing testimony of uncharge
22  sexual assualt and that prosecution's closing argument,
23  she said, "[I]n order to for you to find defendant not guilty,
24  you would have to believe that Korina lied. You would have
25  to believe that Jerri lied. You would have to believe
26  that Kimberly lied. (italics added). Defense counsel
27  immediately objected, stating "Your Honor, I object to
28  that statement because that's improper reading of the

1108 instruction, "(see CALJIC No. 2.50.01.) (6RT 677.)
The court overruled the objection with an explanation
so garbled that it may have been mistranscribed: "But
that's not an incorrect statement that you [sic] made
because you do have to get past everybody you do have an
inference from them." The court did not alter its ruling
after defense counsel made one last effort, stating that
the jurors "can believe the 1108 witnesses and still render
a not guilty verdict. . . . .

    4. The Court of Appeal found that defense counsel's
objection was well taken, and that the prosecutor's state-
ment was "simply wrong." (Opinion p. 22) and the court
err by not siding with defense counsel. Thus, Evidence
Code section 1108 was clearly used to allow petitioner to be
convicted based upon his propensity to commit uncharge
sexual offenses as shown by Jerri and Kimberly evidence.

    5. Petitioner was deprived of his Right to enjoy
the privilege Against Self-incrimination guaranteed by
the Fifth Amendment to the United States Constitution
When the prosecutor Improperly commented upon his
failure to testify in his own defense. During closing
arguement, the prosecutor pointed out to the jury that
Korina had testified to details about the appearance of
petitioner's car and residence particularly his bedroom
Where alledge sexual assualts were said to have ocurred.
She stated: "Now, other than to assault this child, why
is she in his bedroom? What explanation have you heard
for that?" (RT 608) Defense counsel immediately

1  objected. ( RT 608). After closing arguments, and
2  outside the presence of the jury, defense counsel stated
3  more specifically: "... based on the state of the case, the
4  only two people who would be able to explain - strike that.
5  The only two people who were present were Korina and
6  [ petitioner ], and the implication was that there was no
7  explanation from [petitioner], no innocent explanation for why
8  Korina was in the room. That is a direct comment on the
9  defendant's failure to testify and explain why ... that
10 is a direct comment on his failure to take the stand,
11 and that actually is an objection that really gives
12 cause for a mistrial." (RT 693-694). The trial court
13 overruled the objection and denied the motion for a
14 mistrial ( RT 695).

15       6. The Court of Appeal held that this was not
16 GRIFFIN error because of Teri, Korina's grandmother
17 and petitioner's girlfriend provided an alternative explanation
18 for Korina's familiarity with petitioner's bedroom. (Opinion, p21 )
19 Petitioner disagrees. The prosecutor clearly pointed out
20 to the jury that there was no explanation in evidence for
21 Korina's presence in the bedroom other than the one Korina
22 herself had offered - that it was the site of sexual
23 assaults by petitioner. The evidence given by Teri - that
24 Korina was "playing hookers" in the bedroom - does not
25 dimish the fact that the prosecutor invited the jury to
26 surmise that the only person who could had to testify
27 in order to do so. There is no reasonable likehood that the
28 juror could have understood these comments to mean

4

1  anything else. (People v Roybal (1998) 19 Cal. 4th
2  481, 514.)

3      7. Petitioner suffered prejudice as a result of
4  this error unless it was harmless beyond a reasonable
5  doubt. (See People v Turner (2004) 34 Cal 4th 406, 421;
6  See also People v Hovey (1988) 44 Cal. 3d 543, 572,
7  applying Chapman v California (1967) 386 U.S 18.)
8  Petitioner contends that it was not.

9      8. The prosecution's case centered on Korina's
10 credibility. According to Korina the vast majority of the
11 incidents occurred in petitioner's house, specifically in his
12 bedroom. This, according to the prosecutor's argument, was
13 the only reason for Kornia's familiarity with the house,
14 which thus became a very incriminating piece of evidence.
15 Her commend on the lack of any alternative explanation for
16 Korina's presence in the bedroom would clearly cause the
17 jury to believe that Korina had in fact been molested in
18 petitioner's bedroom, or else he would have given some
19 rational explanation regarding why Korina had been there.
20 The prosecutor's comment was not harmless beyond a
21 reasonable doubt, and petitioner's conviction should be
22 reversed in the interest of justice.

23     9. In sentencing petitioner, the trial court
24 erroneously believed that consecutive sentences for
25 counts ONE, Two, and Three were mandatory pursuant
26 to Penal Code Section 667.6 subd.(d) ( RT 717). Petitioner
27 contends that consecutive terms were not in fact mandatory,
28 because none of the crimes of which petitioner was convicted

1  Penal Code section 269, Penal Code section 288.2, subd. (a),
2  and Penal Code section 311.4 subd. (c) - are specified
3  by Penal Code section 667.6, subd. (d) as crimes for
4  which consecutive sentences are mandatory. generally,
5  the sentence for multiple felonies is calculated
6  pursuant to Penal Code section 1170.1, subd. (a), which
7  provides in relevant part

8  ".... the aggregate term of imprisonment....
9  shall be the sum of the principal term,
10  the subordinate term, and any additional
11  term imposed for applicable enhancements...
12  The principal term shall consist of the greater
13  term of imprisonment imposed by the court
14  for any of the crimes, including any term
15  imposed for applicable enhancements. The
16  subordinate term for each consecutive offense
17  shall consist of one-third of the middle term
18  of imprisonment prescribed of each felony
19  conviction for which a consecutive term of
20  imprisonment is imposed ...

21  As stated above, the trial court did not follow the mandate
22  of Penal Code section 1170.1 subd. (a) which requires sub-
23  ordinate consecutive terms to be calculated as one-third
24  the middle term. The trial court elected to impose
25  consecutive full term sentences for the three counts of
26  Penal Code section 269 alleged in Counts One, Two, and Three,
27  expressly relying on Penal Code section 667.6 subd. (d).
28  The trial court additionally imposed consecutive

1  terms forCount Four (Penal Code section 288.2 subd(a)
2  and Fire (Penal Code section 311.4 subd(c)) for the
3  same reasons despite the fact that these offenses
4  are not specified in Penal Code section 667.6 subd(d)
5  as felonies for which full consecutive terms may be
6  imposed (RT 717.) The two year consecutive term for
7  Count Four was ordered stayed pursuant to Penal Code
8  section 654 by the Court of Appeal. See Exhibit A
9       10. Petitioner, further, claims that errs
10 by trial court and prosecutor as mention above
11 were harmful when considered cumulatively and disagree
12 with the Court of Appeal opinion that they did not.

## II.
## STATEMENT OF FACTS

15      11. The purpose of the harmless error rule is to
16 avoid "setting aside convictions for small errors or defects that
17 have little, if any, likelihood of having changed the result of
18 the trial." Petitioner contends that errors did in fact
19 affected the outcome of the virdict. (Howard v Walker
20 406 F3d 114, 123 (2d Cir. 2005)). The trial Court of Appeal
21 Assumes that the jury verdict would have been the same
22 absent err(s), but cannot conclude beyond a reasonable doubt.
23 (U.S. v Stewart, 306 F.3d 295, 323 (6th Cir 2002)). See also.
24 U.S. v Tarwater, 308 F.3d 494, 521(6th Cir 2002); U.S. v
25 Cotnam, 88 F.3d 487, 500 (7th Cir. 1996)
26      12. Petitioner contends that admitting uncharge
27 sexual misconduct contribute directly to the verdict.
28 (U.S. v Varoudakis, 233 F.3d 113, 126 (1st Cir 2000);

1 <u>U.S. v Morley</u>, 199 F.3d 129, 140 (3d Cir 1999); <u>U.S. v</u>
2 <u>Jenkins</u>, 345 F.3d 928, 941 (6th Cir 2003); <u>U.S. v Hands</u>,
3 184 F.3d, 1322, 1332 (11th Cir 1999).

4  13. Improper admission of evidence that defendant
5 abused [rape] his wife was not harmless because it could
6 have impelled jury to render adverse verdict to punish him.
7 16. U.S. v Hands.

8  14. Individual harmless errors may be
9 harmful when considered cumulatively. See <u>Taylor</u>
10 <u>v Ky.</u>, 436 U.S. 478, 488 n.15 (1978); <u>U.S. v Canales</u>, 744
11 F.2d 413, 430 (5th Cir 1984); <u>Alvarez v Boyd</u>, 225 F.3d 820,
12 824 (7th Cir. 2000); <u>U.S. v Wallace</u>, 848 F.2d 1464, 1475 (9th
13 Cir 1988); <u>U.S. v Rivera</u>, 900 F.2d 1462, 1469 (10th Cir 1990.)

14  15. Prosecutorial misconduct inflamed
15 jury's passion warrant new [trial] because misconducted
16 prejudiced defendant. (<u>Bates v Bell</u>, 402 F.3d 635, 649
17 (6th Cir 2005)); <u>U.S. v Earle</u>, 375. F.3d. 1159, 1165-66
18 (D.C. Cir 2004).

19  16. Petitioner argues that the trial court
20 erroneously believe that consecutive sentences were
21 mandatory for the three counts of Penal Code section
22 269. Since none of the crimes of which petitioner was
23 convicted - Penal Code section 269, Penal Code section
24 288.2 subd.(a) and Penal Code section 311.4 subd (c)
25 are specified by Penal Code section 667.6 subd (d) as
26 crimes for which consecutive sentences are mandatory.
27 then the trial court did not properly exercise its
28 discretion in sentencing.

17. Finally, petitioner contends that the trial court erred by imposing consecutive sentences because the necessary finding were neither made by the jury nor found to be true beyond a reasonable doubt (_Apprendi v New Jersey_ (2000) 530 U.S. 466, 490; _Blakely v WAshington_ (2004) 542 U.S. 296 [159 L.Ed 2d 403]. While petitioner recognizes that the Court of Appeal was bound by _People v Black_ (2005) 35 Cal.4th 1238, 1244, he notes that the U.S. Supreme court ruled that in _Cunningham v California_ (2007) no. 05-6551 (Lexis 1324) _Blakely_ applied in California as well, which is contrary to the California Supreme Court decision in _Black_ in 2005.      see Exhibit B

## III
## PARTIES

18. Petitioner, Rodrigo Hernandez, is 59 years old and a prisoner of the State of California presently incarcerated at Salinas Valley State Prison, under Doctors care for Post Traumatic Stress Disorder (PTSD); extreme backpain; severe case of feet fungus, and Alcoholism all acquirer in Viet Nam during that war, as well as Type II diabetes, high cholesterol and high blood pressure.

19. M. S. Evans, Warden, State of California.

## IV.
## CONTENTION

9.

20. Errs by the Trial Court in admitting propensity evidence, specifically Jerri Doe and Kimberly Doe, prosecution misduct, and sentencing petitioner to consecutive terms continues to deprived petitioner constitution rights of life, liberty, and pursuit of happiness.

## V.

## Request For Relief

Petitioner is without remedy save for habeas Corpus, according petitioner prays the court.

1. Issue a writ of habeas corpus;
2. Issue an Order to Show Cause;
3. Declare the rights of the parties;
4. Reverse conviction;
5. Immediate release of petitioner;
6. Resentence petitioner appropriately;
7. Appoint Counsel or award reasonable attorney's fees;
8. Grant any and all other relief found necessary or appropriate;
9. Restore petitioner all rights and privileges

Dated June 11, 2007

Rodrigo Hernandez

10.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

## INTRODUCTION.

Petitioner was involved in a romantic relationship for several years with Teri Moreno, who was Korina Doe's paternal grandmother. (RT 82, 124, 230·232, 267) Korina was extremely close to Teri and went to her house frequently. (RT 83, 122, 141, 268) On the days that Korina went to Teri's house after school, either her mother would drop her off or Moreno or petitioner would pick her up. (RT 124.)

Korina recalled that when she was in second grade, petitioner had accompanied her on a school field as a chaperone. (RT 141, 264) Upon returning from the field trip, petitioner took her to his house where they were alone. (RT 142, 209) They went into his bedroom where he touched her chest over her shirt (RT 145.) He did not touch her anywhere else, nor did he try to make her touch him. (RT 147) Although Korina felt "weird" about what had happened, she did not tell anyone about it when she got home. (RT 147·148.)

Korina could not remember what grade she was in, or what time of year it was when the second incident in petitioner's house occurred. (RT 154.) As soon as they got in the house, petitioner took her to his room and told her to take her clothes off, which she did as he took off his own. (RT 155.) Korina could see that petitioner had an erection. (RT 156) He took her hand and put it on his penis and kept his hands on hers, masturbating himself. (RT 156, 160) Afterward, he went

11

1  into the bathroom and Korina got dressed. (RT 161) The two did
2  not speak during or after the incident (RT 162.)
3      Korina described a third incident at petitioner's
4  house, but could not remember what grade she was in when
5  it happen (RT 162) On this occasion, petitioner had Korina lie
6  down on the bed and he took off her pants. (RT 164) She did not
7  help him take them off, but she did not say anything, either
8  (RT 164.) He then orally copulated her, during which she told
9  him to stop. (RT 165-166). He neither stopped nor responded.
10 (RT 166) Again, Korina did not tell anyone when she went
11 home, because she was afraid of how her mom would act,
12 and that her grandmother would be mad at her. (RT. 168-169)
13     A fourth incident occurred in petitioner's bedroom,
14 but again Korina could not remember when that had occurred.
15 (RT 170) On this occasion petitioner had Korina take off her
16 clothes and lie on the bed. He took off his own clothes and
17 got on top of her. (RT 170.) He moved up and down, pressing
18 his penis against her vagina for a few minutes, then got off,
19 stood up, and had her orally copulate him. (RT. 172-173)
20     A fifth incident occurred in petitioner's bedroom
21 in which he told her he had found some videos and wanted to
22 know what was on them. He took them out of his closet and
23 played them and she saw that they were sexually explicit
24 videos. (RT 177) Petitioner told her that he wanted her to
25 do what the people on the video were doing. He told her to
26 take off her clothes, which she did (RT 178). He took off
27 his pants and engaged in sexual intercourse with Korina.
28 (RT. 178-179)

12.

1   Korina described another time, where petitioner
2   had Korina take off her clothes and pose for photographs in
3   provacative poses. She could not remember what grade she
4   was in when this happened. (RT 187.

5       Petitioner never physically forced Korina to get on
6   the bed. He would tell her to get on his bed and so she would.
7   (RT 254-255). Petitioner never struck Korina, yelled at her, or
8   was otherwise "mean" to her (RT. 202). He was nice to her. (RT 203)

9       After petitioner and Teri broke up, they remained
10  friends (RT 279.) The last time petitioner stopped by to
11  see Korina, approximately when she was in sixth grade,
12  he took her out to lunch (RT 101-102)

13      In the sixth grade, Korina told her friend Kiana
14  in the course of a game of truth or dare, in which Kiana had
15  said to Korina "I dare you to tell me your deepest secret."
16  (RT 529.) Korina told Kiana not to tell anyone else, but
17  another girl named Jessie overheard the conversation and
18  asked Korina what had happened. (RT 196, 245-246, 296-297,
19  299-300)

20      In May of 2002, when Korina was in sixth grade,
21  her friend Mary, who heard about the incident from Jessie,
22  told a teacher what had happened (RT. 197, 221, 245, 257)
23  At first Korina denied sexual incidents happened.
24  She also stated that "she was having family problems."
25  Later a counselor spoke to Korina, then called her
26  mother. (RT 81.) In the presence of the counselor, Korina
27  told Varina that petitioner had begun molesting her
28  when she was in second grade, and that it had occurred

13.

1  "several times". (RT 97) Varina took Korina to the
2  police station. (RT 85, 96, 106, 197-198, 200) There they
3  spoke to Officer Sun. Later they spoke with
4  Detective Juan Serrano (RT 106, 306) Varina did not
5  tell Serrano about the yeast inflections, bed wedding,
6  clinginess, or restlessness. (RT 106-107, 403-404.)
7  Despite speaking with Serrano three to four times and
8  the Doctor who examine Korina, who found, "no
9  adnormalities around the vaginal and anus area
10 indicating no trauma had occurred. It never
11 occurred to Varina to mention these things until the
12 prosecutor called her the night before her testimony
13 at trial to ask her whether she could think of any-
14 thing else suspicious (RT 107-108, 112.)
15        On May 16, 2002, Serrano set up a pretext
16 call in which he had Korina call petitioner, instructing
17 her to say things of a sexual nature which were not
18 true, basically writing a script for her. (RT 203, 229, 308-
19 320.) As Serrano instructed, Korina told petitioner that she
20 was suicidal and that her friends thought she was a
21 slut. (RT 232-233, 385.) She also told him that she had a
22 boyfriend, and described orally copulating him as well as
23 other sexual activity. (RT 234, 385-386) On May
24 29, 2003, a search of petitioner's house was conducted
25 pursuant to a search warrant. (RT 316-317) In a
26 drawer drawer in the master bedroom, belonging to
27 his common-law wife, police found two commercial
28 pornographic videotapes entitled "Rock That Young Ass"

URT PAPER
TE OF CALIFORNIA
D 113 (REV 3-85)
26391

1 and "Old Men Younger Chicks." (RT 379-380). The
2 videotapes had been purchase by his common-law
3 wife as a birthday present March, 2003.

4          Jerri Doe met petitioner in 1971 when she
5 was 15 years old and he was 23 years old (RT 433-434)
6 A week or two after they first met, petitioner asked
7 Jerri out on a date. (RT 435.) They went to see a movie,
8 then had dinner. (RT 436) Later, in the car, petitioner
9 began kissing her, then laid her back on the seat. He
10 was not violent (RT 436.) He was not vicious or mean,
11 but he was "forceful" and Jerri was naive. (RT 448.)
12 Jerri remembered being wedged between the steering
13 wheel and the seat when petitioner penetrated her
14 vagina with his penis. (RT 436) When she got home,
15 petitioner and Jerri's mother played board games.
16 Jerri felt ashamed and scared but didnot tell any-
17 one what had happened. (RT 438.) Jerri continued
18 dating petitioner, eventually marrying him in 1974.
19 (RT 433, 439)

20          Jerri and petitioner seperated in Fedraiary of
21 1988 and divorce a few years after that. (RT 440.) The
22 divorce was not an amicable one (RT 444-445).
23 Neverless, Jerri never alleged during the divorce
24 proceedings that petitioner had ever raped her. (RT 445.)

25          Kimberly who was seven or eight years old,
26 when petitioner started dated Jerri was living in
27 the same house and was Jerri younger sister

28

COURT PAPER
STATE OF CALIFORNIA
STD 113 (REV 3-95)

28391

15.

1  Kimberly states that when was seven or eight
2  petitioner would put his hands down her pants
3  inside of her underwear, rubbing her buttocks and
4  vagina (RT 455-456). She also states that she told
5  her mother but no police report was ever filed.
6        After closing arguments were completed, defense
7  attorney moved for a mistrial, arguing in relevant part
8  that the prosecutor had improperly commended on
9  petitioner's failure to testify by stating that there were
10 only two people who can explain what happened; Korina
11 and petitioner (RT 694.) The motion was erroneously
12 denied (RT 695, 697.)
13        Petitioner was found guilty as charged (RT 327 329,
14 RT 699-702.) At sentencing, the trial court stated that in
15 order to comply with <u>Blakey v Washington</u>, supra, 524 U.S.
16 296 [159 L.Ed 2d 403] it was disregarding all circumstances
17 in aggravation within the meaning of California Rules
18 of Court, rule 4421. (RT 711)
19                ARGUMENT
20
21        Petitioner was sentenced under Penal Code
22 Section 667.6 subd(d) which gives the trial court
23 authority to impose full term consecutive terms where
24 defendant is convicted of two or more specified felonies,
25 provided the crimes involved separate victims or involve the
26 same victim on separate occasions. The statute asserts that in
27 making this determination, the court shall consider
28 whether, between the commission of one sex crime and

URT PAPER
TE OF CALIFORNIA
D 113 (REV 3-95)
26391

1  another, the defendant had a reasonable opportunity to
2  reflect upon this actions and nevertheless resumed sexually
3  behavior, It states further that "[n]either the duration of
4  time between crimes, nor whether or not the defendant lost
5  or abandoned his or her opportunity to attack, shall be in
6  and of itself, determinative on the issue of whether the
7  crimes in question occurred on separate occasions."

8       In the case at bar, petitioner was convicted of
9  three counts of aggravated sexual assault of a child under
10 14 and 10 or more years younger than the defendant (Penal
11 Code section 269); one count of distributing or exhibiting
12 harmful matter to a minor (Penal Code section 288.2, subd (a))
13 and one count of employing, persuading, or inducing a minor's
14 involvement in modeling, posing, or performing sexual conduct
15 (Penal Code section 311.4, subd (c).) Generally, the sentence
16 for multiple felonies is calculated pursuant to Penal Code
17 section 1170.1 subd (a).

18      As stated above, the trial court did not follow
19 the mandate of Penal Code section 1170.1, subd (a.), which
20 requires subordinate consecutive terms to be calculated as
21 one-third the middle term. Instead it relied upon Penal
22 Code section 667.6 subd (d). The trial court elected to
23 impose consecutive full term sentences for the three counts
24 of Penal Code section 269 alleged in Count One, Two, and
25 Three, expressly relying on Penal Code section 667.6 subd (d).
26 The trial court additionally imposed consecutive terms
27 for Count Four (Penal Code sections 288.2 subd (a)) and
28 Five (Penal Code section 311.4, subd (c)) for the same

COURT PAPER
STATE OF CALIFORNIA
STD 113 (REV 3-95)

28201

1 reasons despite the fact that these offenses are not
2 specified in Penal Code section 667.6, subd (a) as
3 felonies for which full consecutive terms may be imposed.
4 (RT 717). The two year consecutive term for Count Four
5 was ordered stayed pursuant to Penal Code section 654
6 by the court of Appeal. See Exhibit A.
7    Petitioner contends that the trial Court had
8 erred in relying on these considerations since the jury
9 had not been asked to pass on them. AOB 47-53. In
10 addition, petitioners argues that the trial Court had
11 erred in relying since it employed the preponderance of
12 the evidence standard rather than the standard of proof
13 beyond a reasonable doubt. California Rules of Court rule
14 4,420(b).[C]ircumstances in aggravation and mitigation
15 shall be established by a preponderance of the evidence.").
16    In Apprendi v New Jersey, 530 U.S. 466 (200),
17 the U.S. Supreme Court held that a defendant has a
18 federal constitutional right to a jury trial and application
19 of the proof beyond a reasonable doubt standard as to "any
20 fact that increases the penalty for a crime beyond the
21 prescribed statutory maximum..." id at 490. The sole
22 exception to the Apprendi rule is that "the fact of a prior
23 conviction" need not be tried by jury. IBid.
24    In Blakely v Washington, 159 L.Ed 2d 403, the
25 U.S. Supreme Court clarified that the "relevant" statutory
26 maximum" is not the maximum sentence a judge may impose
27 after finding facts, but the maxium he may impose without
28 any additional finding." Id at 413-414, emphasis in

1 original. Given this principle, there is no doubt that
2 the California sentencing scheme utilized here <u>requires</u>
3 <u>a jury trial</u> and application of the proof beyond a
4 reasonable doubt standard before full consecutive terms
5 may be imposed.
6          As was noted above, Penal Code section 667.6, subd (d)
7 provides that full consecutive terms may be imposed only if
8 the court makes "additional findings." <u>Blakely</u>, 159 L.E2d
9 at 413-414. Recently, the California Supreme Court discussed
10 California's Determinate Sentencing Law in <u>People v Black</u>,
11 35 Cal 4th. 1238. At the outset of its analysis, the court
12 acknowledged that the "mandatory language of section
13 1170, subd (b)" which mandates the middle term of the three
14 prescribed terms for any felony absent aggravating circum-
15 stances, provided "some support" for the claim that California's
16 scheme falls within the <u>Blakely</u> rule. Id at 1254. None-
17 theless, the court reasoned that <u>Blakely</u> did not apply since
18 "the provisions of the California determinate sentence law
19 simply authorize a sentencing court to engage in the type
20 of factfinding that traditionally has been incident to the
21 judge's selection of an appropriate sentence within a
22 statutorily prescribed sentencing range." Ibid. Based on
23 this premise, the court concluded that "even though section
24 1170, subd (b) can be characterized as establishing the
25 middle term sentence as a presumptive sentence, the
26 upper term is the "statutory maximum" for purposes of
27 Sixth Amendment analysis." Id at 1257.
28          Turning its analysis to the question of

1  consecutive sentencing, the Court stated that "[t]he
2  same reasoning that leads us to conclude that a jury
3  trial is not required on the aggravating factors that
4  justify imposition of the upper terms leads us to conclude
5  that a jury trial is not required on the aggravating
6  factors that justify imposition of consecutive sentences."
7  Id at 1262.

8      Petitioner believes that this analysis does not
9  comport with the holding of _Apprendi_ which was applied
10  in _Blakely_. As the U.S. Supreme Court made clear in
11  _Apprendi_, there is no constitutional distinction "between
12  an 'element' of a felony offense and a 'sentencing factor'"
13  insofar as the right to a jury trial is concerned. _Apprendi_,
14  530 U.S. at 478. Thus, a trial court's sentencing
15  discretion is limited "to the fact reflected in the jury
16  verdict alone." _Id._ at 483, N. omitted.

17      Penal Code section 667.6, subd(d) requires conse-
18  cutive full term sentences _if_ the crimes involve separate
19  victims the same victim on separate occasions, to be deter-
20  mined by considering a number of factors. Thus, in order
21  to impose full consecutive terms, the court must find on
22  its own additional facts beyond the findings made by the
23  jury as identified in the Penal Code section 667.6 subd(d)
24  Plainly, this system violates the defendant's right to a
25  jury trial as explained in _Apprendi_ and _Blakely_.

26      Although not presenting the identical issue,
27  this case is similar to _Cunningham v California_ (2007)
28  126 S.Ct. 1329; 164 L.Ed 2d. See Exhibit B

1 There, the sentencing judge imposed an aggravated term
2 as a result of his own factual finding of aggravating
3 circumstances." Similarly, in the instant case, additional
4 factual findings had to be made as set forth in Penal Code
5 section 667.6, subd (d) in order to justify the imposition
6 of full consecutive terms. There is no requirement that
7 these additional facts be found true beyond a reasonable
8 doubt, nor did the sentencing judge state that it had
9 so found. Thus, petitioner was deprived of his Sixth
10 Amendment right to a jury and his Fourteenth Amend-
11 ment right to due process just as in _Cunningham_ and
12 _Blakely_. Pursuant to the recent U.S. Supreme Court
13 decision in _Cunningham_ and _Blakely_, petitioner's
14 sentence was clearly illegal and unconstitution and
15 must be corrected forwith. An Order to Show Cause
16 should be issued along with appointment of counsel.
17                          2.
18        Evidence Code section 1108, subd (a), pursuant to
19 which the evidence of petitioner's uncharged sexual acts of
20 Jerri and Kimberly was admitted, allows the introduction of
21 other-crime evidence solely to establish a defendant's dis-
22 position to comment sexual offense. It is petitioner's po-
23 sition that this type of evidence at his trial was error
24 which violated his right to due process of law and a fair
25 jury trial under the Fifth, Sixth, and Fourteenth
26 Amendment of the United States Constitution. (_Bean v_
27 _Calderon_, supra 163 F3d at p 1084; _McKinney v Rees_, supra
28 993 F. 2d at pp. 1385-1386.

1    In the present case the trial court admitted evidence
2  that petitioner had raped Jerri and sexually assaulted
3  Kimberly under Evidence Code section 1108 and instructed
4  the jury that it could "infer that the defendant had a
5  disposition to commit sexual offenses" and, in turn, use a
6  finding "that the defendant had this disposition [to] infer
7  that he was likely to commit and did commit the crime or
8  crimes of which he is accused." (CT 262-265) The evidence
9  was admitted over a defense objection that its admission
10  would result in a due process violation (CT 188-190). In
11  prosecutor closing argument, she encouraged the jury to
12  use the evidence relating to Jerri and Kimberly to find
13  that petitioner was guilty of the charged crimes because
14  he had a propensity to commit sexual offense. (RT 613-614)
15  Thus, Evidence Code section 1108 was clearly used to allow
16  petitioner to be convicted based upon his propensity to
17  commit sexual offenses as shown by the Jerri and Kimberly
18  evidence.
19    As noted in People v Fitch (1997) 55 Cal. App 4th 172,
20  the due process clause has limited operation beyond the specific
21  guarantees of the Bill of Rights. Nevertheless, due process
22  draws a boundary beyond which state rules of evidence can-
23  not stray. (Jammel v Van de Kamp (9th Cir 1991) 926 F.2d
24  918, 919.) Therefore, if petitioner can demonstrate that
25  allowing the jury to use character evidence to show a
26  disposition to commit offense violates a fundamental
27  principles of justice, then he has established a valid
28  due process claim. (Fitch supra at p. 180.)

22

1  The test of whether a due process violation has
2  occurred is two-pronged: first, the inferences which a
3  jury may draw from the evidence must be constitutionally
4  impermissible and second, the evidence must be of such a
5  quality that it necessarily prevents a fair trial. (Jammal
6  v. Van de Kamp, supra at p. 920.)
7      Whether a procedural or evidentiary rule can be
8  characterized as fundamental to due process and fair
9  trial is determined through historical practice. (Cooper
10  v. Oklahoma (1996) 517 U.S. 348, 356; Medina v California
11  (1992) 505 U.S. 437, 445-446) Due process is violated
12  by a state rule that "offends some principle of justice so
13  rooted in the traditions and conscience of our people as to
14  be ranked as fundamental." (Medina, supra at p. 445.)
15      The U.S. Supreme Court has recognized the
16  unanimous tendency of courts following the common law
17  tradition to disallow resort by the prosecution to evidence of a
18  defendant's evil character to establish a probability of his
19  guilt and has strongly suggested that introduction of prior
20  crimes evidence solely for the purpose of showing a criminal
21  disposition would violate due process. (Michelson v. U.S (1948)
22  335 U.S. 469 [93 L.Ed 168]; Spencer v Texas (1967) 385 U.S. 554,
23  572-574 [17 L.Ed. 2d 606], conc. and dis. opn of Warren, CJ)
24  Furthermore, at least two federal courts of appeal have
25  explicitly held that admission of character evidence to prove
26  the disposition of the defendant to commit the current offense
27  violates federal due process. (Panzavecchia v Wainwright
28  (5th Cir 1981) 658 F.2d 337; McKinney v Rees, supra 993 F.2d 1378)

1   Evidence Code section 1108 offends long established
2   traditions of fundamental due process and entitlement to a
3   fair trial, which prohibit introduction of propensity or bad
4   character evidence. The use of such evidence to show that the
5   defendant has criminal propensities, and therefor is by inference
6   likely to have committed the currently charged crime, has
7   been universally condemned by ANGLO·American jurisprudence
8   for over 300 years. In <u>McKinney v Rees</u>, supra 993 F2d at
9   p 1380, the court stated:

10      "The use of 'other acts' evidence as character evidence
11      is ... contrary to firmly established principles of
12      Anglo-American jurisprudence. In 1684 Justice
13      Withins recalled a prior case in which the court
14      excluded evidence of any forgeries, except the one
15      for which defendant was standing trial. [Citation.]
16      Similarly, in <u>Harrison's Trial</u>, the Lord Chief
17      Justice excluded evidence of a prior wrongful act.
18      of a defendant who was on trial for murder ...

19   Petitioner's position also finds support in <u>Panzavecchia v</u>
20   <u>Wainwright</u>, supra 658 F.2d 337, which held that the admission of
21   a prior conviction which was irrelevant to the murder charge
22   being prosecuted, may have influenced the jury's verdict in
23   finding the defendant guilty of murder, particularly since
24   there was no limiting instruction telling the jury that it should
25   utilize the prior [uncharged] conviction only for purposes of the
26   illegal firearm possession with the defendant was also charged.
27   The circuit court further found that the prejudicial effect of
28   this error denied defendant his Fifth and Fourteenth

1  Amendment rights to due process and a fair trial, and
2  accordingly that his murder conviction must be reversed.
3  (Id. at pp 340·342)
4        Clearly, the use of other crimes evidence to establish
5  a defendant's guilt based on propensity or disposition
6  violates constitutional guarantees of due process and a fair
7  jury trial as guarantee by the Fifth, Sixth, and Fourteenth
8  Amendment. Evidence Code section 1108 is designed to do
9  precisely that and was so applied in the present case. Therefor
10 error of constitutioned magnitude occurred.
11       The U.S. Supreme Court has stated that evidence of
12 other offenses by a criminal defendant, not resulting in con-
13 viction, should be received with "extreme caution" and only after
14 a careful weighing by the trial court under Evidence Code section
15 352, with any doubts resolved in favor of the defendant. (People
16 v. Thomas (1978) 20 Cal.3d 45, overruled on other grounds in
17 People v Tassell (1984) 36 Cal 3d 77, 89 fn 8.)
18       In the present case, defense counsel objected to the
19 evidence pertaining to Jerri and Kimberly on the grounds, among
20 others, that it was not probative and it was highly prejudical.
21 (CT 190; RT 29-32,38). The trial court overruled these objections.
22 (RT 34·35,38.) Defense counsel later moved to strike the testimony
23 of Jerri and Kimberly, but that motion was also denied.(RT 543-545)
24 A challenge to a trial court's choice to admit or exclude
25 evidence under Evidence Code Section 352.is reviewed for
26 abuse of discretion. (People v Harris (1998) 60 Cal. App 4th
27 727 at pp 736·737) Reversal will result only if the trial
28 court's ruling was "arbitrary, whimsical, or capricious as a matter

25

1  of law [Citation] (People v Linkenauger (1995) 32 Cal App 4th

2  1603, 1614.)

3       The evidence relating to the alleged rape of Jerri Doe did

4  little more than cast petitioner in the light of an uncontrollable

5  sexual deviant of some sort. No evidence was presented that he had

6  ever been arrested for this alleged offense. Jerri's testimony indicated

7  that she was to ashamed to tell anyone, and that she married

8  petitioner only because she was no longer a virgen. (RT 438-441.)

9  This evidence was inflammatory because it could well have caused

10 the jury to believe that he had committed a serious crime against

11 Jerri for which he had never been punished, and that he should be

12 punished for it now (See People v Ewoldt (1994) 7 Cal 4th 380; 405.)

13      The same is true, if not more so, with respect to the

14 evidence regarding Kimberly Doe. According to Kimberly, she was a

15 child of about Korina's age when petitioner began molesting her

16 Clearly, a jury is going to be susceptible to a certain amount of

17 outrage if it believes Kimberly's story, and knows that the crimes

18 were never prosecuted.

19      The fact that petitioner was never prosecuted or punished

20 for the alleged rape of Jerri or the sexual offenses against

21 Kimberly "....increased the danger that the jury might have

22 been inclined to punish defendant for the uncharged offenses,

23 regardless whether it considered him guilty of the charged

24 offenses, and increased the likelihood of "confusing the issues"

25 [Citation] because the jury had to determine whether the

26 uncharged offense [] had occurred." (Ewoldt, supra 7 Cal 4th at p

27 405.) The U.S. Supreme Court in People v Falsetta (1999) 21 Cal

28 4th 903, also indicated that a prior sexual offense which

26

1  did not result in a conviction is less likely admissible. Here
2  the alleged crimes against Jerri and Kimberly were never
3  prosecuted or reported. The jury was faced with the task of first
4  determining whether these incidents actually had occurred
5  some 30 years ago, and then applying the jury instructions
6  regarding propensity evidence.
7     Evidence that petitioner had alleged raped Jerri and
8  molested Kimberly some 30 years prior to the instant offenses
9  should clearly have been excluded as being too remote in time to
10 to have any probative value whatsoever. No "bright-line" rule
11 exists to assist in determining how old is too old in this context.
12 (Harris, supra 60 Cal. App. 4th at p 739). However, in Harris, a
13 gap of 23 years was deemed too long for the evidence to be
14 admissible. (Harris, ibid; see also People v Burns (1987) 189
15 Cal App 3d 734, 738 [20-year-old conviction is remote for
16 purpose of Evidence Code section 352]) The remoteness of
17 the claimed offenses made it virtually impossible to defend against
18 Furthermore, it is highly questionable what true probative value
19 offenses occurring so long ago would have. The remoteness of
20 this evidence weighed strongly in favor of exclusion.
21     Jerri's testimony occupies approximately 18 pages of
22 trial transcript (RT 432-449); Kimberly's approximately 20
23 pages (RT 449-469); closing arguement by both counsel
24 dealing with this evidence involves approximately nine pages
25 of transcript. (RT 613-617, 670-672, 674) "[L]engthy
26 instructions and admonitions" (Harris, supra 60 Cal App 4th at
27 p 739), were not insignificant amounts of time, and
28 should have weighed against admission of the evidence.

1  The evidence regarding Jerri had virtually no
2  probative value. Although she was young at the time of the
3  incident, so was petitioner such that they were contemporaries.
4  They had embarked on a romantic relationship which
5  eventually led to a marriage that lasted for more than 14
6  years. Jerri herself testified that petitioner was not "violent"
7  "vicious" or "mean", just "forceful." (RT 436-437, 448). This
8  incident is extremely dissimilar to the crimes which were
9  the subject of the present case. The evidence had little probative
10 value in terms of establishing modus operandi or scheme or
11 plan.( See Ewoldt, supra, 7 Cal. 4th at p 408 [significant semi-
12 larity require to establish common design or plan]; Harris, supra
13 60 Cal App 4th at pp 739.741 [similarity].)

14     Clearly, the main purpose served by this evidence
15 was to inflame the jury and prejudice it against petitioner.
16 The Court of Appeal found that although the jury should not
17 have ~~the evidence~~ heard the evidence of petitioner's alleged
18 rape of Jerri, it was not ~~have~~ reasonably likely that a more
19 favorable result would have been reached in the absence of
20 that error.(Opinion, p 26, applying People v Watson (1956) 46
21 Cal. 2d 818, 836.) The court found that because the critical
22 question at trial was the credibility of Korina's testimony,
23 then if the jury believed her testimony, it would have convicted
24 petitioner regardless of its knowledge of the incident with Jerri.
25 (Opinion, pp 26-31) Petitioner disagrees. According to her
26 mother and Korina, Korina had never exhibited any fear,
27 dislike, or distrust of petitioner. (RT 86). By all accounts, she
28 had been very close to her grandmother, and also to petitioner

28

1  While he and her grandmother were involved in a relationship.
2  It was after that relationship was ended by petitioner, causing
3  her grandmother much pain, that Korina made her revelation in
4  the context of a schoolyard game of "truth or dare." (RT 194,
5  244; RT 529.) The titillating story made its way through
6  Korina's elementary school, finally finding its way to a teacher
7  through another student, not Korina, as much as two
8  years after Korina's truth or dare game (RT 197, 221, 245, 251)
9       It cannot be said that the admission of the inflamma-
10  tory evidence presented by Jerri and Kimberly was less than
11  harmless. A jury which had not heard the prior offense
12  uncharge evidence might well have had doubts about Korina's
13  credibility. The jury certainly did not return its verdict
14  quickly; rather it arrived at a verdict after deliberations of
15  approximately five and one-half hours spanning two days.
16  (Ct 320-321, 327-329) During their deliberations, the
17  jury requested substantial amounts of feedback (CT 320-321)
18  indicating that the case was a close one (See People v Pearch
19  (1991) 229 Cal App 3d 1282, 1295 [juror questions and requests
20  to have testimony reread are indications the deliberations
21  were close; see also Maupin v Widling (1987) 192 Cal. App. 3d
22  568; 572-573; People v Fuentes (1986) 183 Cal App 3d 444, 456.)
23  Thus, petitioner believes the Court of Appeal erred in holding
24  that there was no reasonable probability that the outcome would
25  have been more favorable had the jury not heard the Jerri evidence.
26       The Fifth Amendment forbids comments on an accused's
27  exercise of the privilege against self-incrimination. (Griffin v
28  California (1965), 380 U.S. 609.) Griffin error occurs whenever

29

1  the prosecutor or the court, either directly or indirectly,
2  commends upon a defendant's failure to testify in his own
3  defense. (Id. at pp 611-615; People v Bradford (1997) 15 Cal 4th
4  1229, 1339; People v Medina (1995) 11 Cal 4th 694. 755.) Such
5  error may occur when comments point out that certain
6  evidence is uncontradicted if such could only be provided by
7  the defendant who, in order to do so, would have had to testify
8  (Bradford, ibid), or when they refer to the absence of evidence
9  that only the defendant's testimony could provide. (People
10  v Hughes (2002) 27 Cal. 4th 287, 372; People v Murtishaw
11  (1981) 29 Cal. 3d 733, 757 fn. 19.) On appeal, a reviewing court
12  must determine whether there is a reasonable likelihood
13  that the jurors misconstrued or applied the words as claimed.
14  (People v Roybal (1998) 19 Cal 4th 481, 514.)
15          In the present case, during closing argument, the
16  prosecutor pointed out to the jury that Korina had testified to
17  the appearance of petitioner's bedroom where the sexual
18  assaults were said to have occurred. "...other than the
19  assault this child, why is she in his bedroom? What
20  explanation have you heard for that?" (RT 608.) The
21  prosecution's case centered on Korina's credibility. This,
22  according to the prosecutor's argument, was the only reason
23  for Korina's familiarity with the house, which thus became
24  a very incrimination piece of evidence. Her comment on
25  the lack of any alternative explanation for Korina's
26  presence in the bedroom would clearly cause the jury to
27  believe that Korina's had in fact been molested in
28  petitioner's bedroom, or else he would have given some

1  rational explanation regarding why Korina had been there.
2  The prosecutor's comment was not harmless beyond a
3  reasonable doubt, and petitioner's conviction should be
4  reversed.

5     It is misconduct for the prosecutor to misstate the
6  applicable law. (People v Marshall, supra, 13 Cal 4th at p 831.)
7  To prevail on a claim of prosecutorial misconduct based on
8  remarks to the jury, the defendant must show a reasonable
9  likelihood the jury understood or applied the complained of
10 comments in an improper or erroneous manner. (People v Frye.
11 (1998) 18 Cal. 4th 894, 970; People v Berryman (1993) 6 Cal
12 4th 1048, 1072.) In conducting this inquiry, reviewing
13 courts "do not lightly infer that the jury drew the most
14 damaging rather than the least damaging meaning from
15 the prosecutor's statement [Citation] (Frye, ibid; People v
16 Brown (2003) 31 Cal 4th 518, 553-554.)

17     Conduct by a prosecutor that does not violate a
18 court ruling is misconduct only if it amounts to "the use
19 of deceptive or reprehensible methods to attempt to persuade
20 either the court or the jury." (People v Strickland (1974) 11
21 Cal.3d 946, 955; accord, People v Espinoza (1992) 3 Cal 4th 806,
22 820) or is "so egregious that it infects the trial with such
23 unfairness as to make the conviction a denial of due
24 process" People v Harris (1989) 47 Cal 3d 1047, 1084; accord
25 People v Silva (2001) 25 Cal 4th 345, 373.) Under state law, a
26 prosecutor who uses deceptive or reprehensible methods to
27 persuade either the court or the jury has committed
28 misconduct, even if such action does not render the trial

COURT PAPER
STATE OF CALIFORNIA
STD 113 (REV 3-95)
28391

1 fundamentally unfair. (Frye, supra, 18 Cal 4th at p 969.)

2     In the present case, during her closing argument,

3 the prosecutor stated "... in order for you to find the defendant

4 not guilty, you would have to believe that Korina lied. You

5 would have to believe that Jerri lied. You would have to

6 believe that Kimberly lied." (RT 677.) Defense counsel

7 immediately objected, stating "Your Honor, I object to that

8 statement because that's improper reading of the 1108

9 instruction." (RT 677.)

10     The Court of Appeal found that defense counsel's

11 objection was well taken, and that the prosecutor's statement

12 was "simply wrong." (Opinion, p 22.) Despite the fact that the

13 Court found the prosecutor's statement to be "at once an

14 improper appeal to sympathy, an implicit invitation to punish

15 defendant for uncharged offenses, and an outright misstate-

16 ment of law" (Opinion, p 25.), however, it also found that it

17 was harmless error since it was contrary to the plain

18 instruction that the jury actually received regarding evidence

19 admitted under Evidence Code section 1108. (Opinion, p 25.)

20 Thus, the Court ruled that "[b]ecause the instruction would

21 tend to neutalize the pernicious effects of the argument,

22 those effects should be weighed under the Watson standard

23 governing ordinary trial error." (Opinion p 26).

24     Petitioner disagrees, and believes that the

25 prosecutor's misconduct deprived him of the constitutional

26 right to due process guarantee by the Fourteenth

27 Amendment to the United States Constitution. (See

28 Miller v Pate (1967) 386 U.S. 1, 6-7; [17 L Ed 2d 690, 694]·

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV 3-85)

28391

1  Brown v Borg (9th Cir 1991) 951 F. 2d 1011, 1015.) Use of false
2  argument to obtain a criminal conviction or sentences deprives
3  the defendant of due process. (People v Sakarias supra
4  22 Cal. 4th at p.633; People v Morrison (2004) 34 Cal 4th 698,
5  717.) Here petitioner was denied due process by the prosecutor's
6  statement to the jury that he could only be found not guilty if
7  the jury believed that not only the complaining witness, but
8  also the witnesses giving testimony under Evidence Code
9  section 1108 had lied. This misstatement of law, coupled
10  with the trial court's apparent concurrence, completely
11  changed the burden of proof shifting it to the defense.
12  This is clearly a due process violation, and prejudice should
13  be determined under the standard of whether it was
14  harmless beyond a reasonable doubt (Chapman v California, supra
15  386 U.S. at p.24)
16          Petitioner further argues, that indivdual harmless
17  errors may be harmful when considered cumulatively.
18  "Trial errors alone which in isolation are harmless might, when
19  aggregated, alter the course of a trial so as to violate a
20  petitioner's right to due process (Alvarez v Boyd, 225 F.3d
21  820, 824 (7th Cir 2000). Although each of the above errors,
22  looked at separately, may not rise to the level of reversible
23  error, their cumulative effect may nevertheless be so prejudical
24  to the appell petitioner that reversal is warranted." (U.S. v
25  Wallace, 848 F.2d 1464, 1495 (9th Cir 1988) The cumulative
26  errors of two or more individually harmless errors has the
27  potential to prejudice a defendant to the same extend as a
28  single reversible error. (U.S v Rivera, 900 F.2d 1462, 1469 (10th

IURT PAPER
TE OF CALIFORNIA
D (113 (REV 3-85)
28381

1  Cir 1990.) In U.S v HANDS, 184 F.3d, 1322, 1334 (11th Cir 1999)
2  the combined impact of prosecutor's inappropriate statement
3  and the trial judge's evidentiary errs worked to deprive
4  defendant of fair trial and thus is not harmless err similar
5  to this present case. In Bates v Bell, 402 F.3d 635, 649
6  (6th Cir 2005) prosecutorial misconduct which deliberately
7  inflamed jury's passion warranted new [trial] because
8  misconduct prejudiced defendant and prosecutorial
9  misconduct in implying in closing that defendant [silence]
10 warranted new trial of . . . . Likelihood that misconduct
11 affected verdict. (U.S. v Earle, 375 F.3d 1159, 1165-66 (D.C. Cir 2004)

12    Emphasis by the court and prosecutor on the
13 wording of all Penal Code section 269 charges that "however
14 slight" constitute those Penal Code had be violated and a
15 guilty verdict be issue. Thus, petitioner humbly resquest
16 the same principle be implemented in this present case.
17 "However slight" [errs] were committed justice demands
18 reversible of guilty verdict. "If it looks like duck, swims
19 like a duck, quacks like a duck then it must be a
20 duck" [err].

21            CONCLUSION
22    For all the foregoing reasons, petitioner respectfully
23 prays the court to reverse criminal conviction and order
24 immediate release of petitioner.

25                    Respectfully submitted
26 Dated June 11, 2007
27                    Rodrigo Vasquez Hernandez
28                    Attorney, Pro Se



IRT PAPER
E OF CALIFORNIA
113 .REV 3-85)

8301

34

S157472

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

---

In re RODRIGO VASQUEZ HERNANDEZ on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

George, C. J., was absent and did not participate.

SUPREME COURT
FILED

APR 1 6 2008

Frederick K. Ohlrich Clerk

_____
Deputy

**WERDEGAR**
_____
Acting Chief Justice

ATTACHMENT

B

Note:

Hudson vs Michigan (2006) no. 04-1360
does not apply in this case whereas
evidence in Hudson was in plain view
which would have been located even if
the police had not violated Knock-notice
rule and enter without waiting a reasonable
time.

Evidence taken belong to fiancee
(see Search Warrant update) and were in
fiancee personal drawer(dresser). Fiancee
did not give Officers right to search her dresser
drawer nor was her personal property was
listed as an area to be search. (See
Search Warrant Affavdid.

Name Rodrigo Herr, idez CB2 CB2-746

Address Salinas Valley State Prison

P.O. Box 1050

Soledad, Ca. 93960 - 1050

CDC or ID Number V 5 4 6 3 7

Superior Court of California

County of Santa Clara

(Court)

**F I L E D**

FEB 6 2007

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara

By ——————————— Deputy

S. Chua

---

Rodrigo V. Hernandez

Petitioner

vs.

People of the State of California

Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. CC 315300

*(To be supplied by the Clerk of the Court)*

---

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

- [ ] A conviction
- [ ] A sentence
- [ ] Jail or prison conditions
- [x] Other (specify): _Motion 1538.5 - Probable Cause and Knock- Notice Violation_

- [ ] Parole
- [ ] Credits
- [ ] Prison discipline _Illegal Search and Seizure_

1. Your name: _Rodrigo Hernandez_

2. Where are you incarcerated? _Salinas Valley State Prison, Soledad California_

3. Why are you in custody? [x] Criminal Conviction  [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon"). _5 Counts_
   _P.C. § 269 ; PC § 261 (a)(2); PC § 289 (a); PC § 288 (a);_
   _PC § 288.1 (a); P.C. § 311.4 (c)_

b. Penal or other code sections: _PC § 269  aggravated assault._

c. Name and location of sentencing or committing court: _Superior Court, County of Santa Clara_
   _City of San Jose_

d. Case number: _CC 315300_

e. Date convicted or committed: _June 30, 2004_

f. Date sentenced: _September 9, 2004_

g. Length of sentence: _45 years to life_

h. When do you expect to be released? _December 24, 2036_

i. Were you represented by counsel in the trial court?  [x] Yes.  [ ] No. If yes, state the attorney's name and address:
   _Traci Owens - Deputy Public Defender. (1 month prior to trial appointe_
   _120 W. Mission, San Jose, Ca 95110_

4. What was the LAST plea you entered? *(check one)*
   [x] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?
   [x] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

6.  GROUNDS FOR RELIEF
   **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

   Ineffective Assistant of Counsel.

   a.  Supporting facts:
      Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did *exactly what* to violate your rights at what time *(when)* or place *(where)*. (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

   My appointed Attorney violated the following:
   1. Fail to advise me of any potentially meritorious issues on appeal.
   2. Fail to file a notice of appeal.
   3. Prepare a request for appointment of counsel on appeal
   4. Request a certificate of Probable cause
   5. Fail to call other witness present when Search Warrant was executed.
   6. Fail to honor my request to testify.
   7. Fail to properly communicate or interview me.
   8. Fail to provide documents and transcript(s) for proper preparation to file Writ of Habeas Corpus

   b.  Supporting cases, rules, or other authority (optional): - See ATTAchment A
      (Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

   1. U.S. Constitution - 4th Amendment: proper counsel
   2. U.S. Constitution - 6th Amendment Section 1
   3. Strick V Washington, 466 US 668, 104 S.ct. 2052, 80 L.Ed 2d 674 (1984) "Federal Standards".

7. Ground 2 or Ground ___ (if applicable):

· Trial Judge Honorable Randolf J. Rice
ERRSR

a. Supporting facts:

① Judge Fait and is required to advise defendant after trial of rights to appeal, the necessary steps and time limits for taking an appeal, and the right of an indigent defendant of his to have counsel appointed for the appeal.

② Wrongfully deny · motion 1538.5 - probable cause and Knock-Notice Violation.

b. Supporting cases, rules, or other authority:

① Violation of Honorable Right. presame innocent until proven guilty.

② CRC, rule 470

③ — See Attachment B and addition grounds.

8. Did you appeal from the conviction, sentence, or commitment? ☑ Yes. ☐ No. If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): Court of Appeal, state of California, Sixth Appellate District.

b. Result Stayed P.C § 288.2.　　c. Date of decision: June 14, 2006

d. Case number or citation of opinion, if known: H027955

e. Issues raised: (1) Court erred·admitting uncharge sexual misconduct

(2) Prosecutor misconduct.

(3) Court erred consecutive sentencing as mandotory

f. Were you represented by counsel on appeal? ☑ Yes. ☐ No. If yes, state the attorney's name and address, if known:

9. Did you seek review in the California Supreme Court? ☑ Yes ☐ No. If yes, give the following information:

a. Result review denied　　b. Date of decision: August 23, 2006

c. Case number or citation of opinion, if known: S145236

d. Issues raised: (1) Trial Court err·by admitted uncharge sexual misconduct

(2) District attorney committed 'Prejudicial Misconduct

(3) Penal Code § 6676 (D)　4.) Consecutive sentences ~ Jury

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

n/A

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

n/A

b. Did you seek the highest level of administrative review available? ☐ Yes. ☑ No.

*Attach documents that show you have exhausted your administrative remedies.*

MC-275 (Rev. July 1, 2005)　　**PETITION FOR WRIT OF HABEAS CORPUS**　　Page five of six

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? ☐ Yes. If yes, continue with number 13.  ☑ No. If no, skip to number 15.

13. a. (1) Name of court: _n/A_

   (2) Nature of proceeding (for example, "habeas corpus petition"): _n/A_

   (3) Issues raised: (a) _n/A_

      (b) _____

   (4) Result (Attach order or explain why unavailable): _n/A_

   (5) Date of decision: _n/A_

   b. (1) Name of court: _n/A_

   (2) Nature of proceeding: _n/A_

   (3) Issues raised: (a) _n/A_

      (b) _n/A_

   (4) Result (Attach order or explain why unavailable): _n/A_

   (5) Date of decision: _n/A_

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
   _n/A_

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
   _See Attachment "A" - ineffective assistance of Counsel_

16. Are you presently represented by counsel? ☐ Yes.  ☑ No. If yes, state the attorney's name and address, if known:
   _____

17. Do you have any petition, appeal, or other matter pending in any court? ☑ Yes. ☐ No. If yes, explain:
   _My appointed appeal attorney will be submitted my appeal to the U.S. Supreme Court._

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
   _ordered by Clerk - see letter dated August 4, 2006 from Kiri Torre, Chief Executive Officer/Court_

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _28 January 2007_         ▶         _____
                                           (SIGNATURE OF PETITIONER)

MC-275 [Rev. July 1, 2005]        PETITION FOR WRIT OF HABEAS CORPUS          Page six of six

COURT OF APPEAL OF THE STATE OF CALIFORNIA

IN AND FOR THE SIXTH APPELLATE DISTRICT

---o0o---



THE PEOPLE OF THE STATE OF )
CALIFORNIA, )
 )
          PLAINTIFF-RESPONDENT, ) COURT OF APPEAL
 ) CASE NO.
 -VS- ) SANTA CLARA COUNTY
 ) CASE NO.   CC315300
RODRIGO VASQUEZ HERNANDEZ, )
 )
          Defendant and Appellant. )
_____)

---o0o---

REPORTER'S TRANSCRIPT ON APPEAL FROM THE JUDGMENT
OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA
THE HONORABLE RANDOLF J. RICE

PROCEEDINGS HELD ON:
MAY 21, 2004
---o0o---

**AUGMENTATION**

APPEARANCES:

FOR THE APPELLANT:   SIXTH DISTRICT APPELLATE PROGRAM
                     100 N. WINCHESTER BLVD. SUITE 310
                     SANTA CLARA, CALIFORNIA 95050

*FEB 15 2005*

FOR THE RESPONDENT:  OFFICE OF THE ATTORNEY GENERAL
                     455 GOLDEN GATE AVENUE, ROOM 11000
                     SAN FRANCISCO, CALIFORNIA 94102

Lydia E. Moseley, C.S.R. 12428

2

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA COUNTY

BEFORE THE HONORABLE RANDOLF J. RICE, JUDGE

DEPARTMENT 29A

---o0o---

THE PEOPLE OF THE STATE OF )
CALIFORNIA, )
            )
      Plaintiff, ) Case No. CC315300
            )
   vs. )
            )
RODRIGO VASQUEZ HERNANDEZ, )
            )
      Defendant. )
_____)

---o0o---


REPORTER'S TRANSCRIPT OF PROCEEDINGS

MAY 21, 2004


**AUGMENTATION**



A P P E A R A N C E S :

FOR THE PEOPLE:        STACEY RUBINO
                       Deputy District Attorney

FOR THE DEFENDANT:     TRACY OWENS
                       Deputy Public Defender


Court Reporter:        Lydia Elisa Moseley, CSR
                       Certificate No. 12428

---o0o---

3

| | DIR | CROSS | RED | RECROSS | VD |
|---|---|---|---|---|---|
1              INDEX OF EXAMINATIONS

| | DIR | CROSS | RED | RECROSS | VD |
|---|---|---|---|---|---|

3  Defendant's

4  Jerry McNair   5      10

5

6

7  Plaintiff's

8  Moises Reyes  21      26      27

9

10                   ---o0o---

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1    SAN JOSE, CALIFORNIA                        MAY 21, 2004

2                      P-R-O-C-E-E-D-T-N-G-S

3             THE COURT:  Calling the matter of People versus

4    Rodrigo Vasquez Hernandez.

5             MS. OWENS:  Good morning, your Honor.  Mr.

6    Hernandez is present.  Tracy Owens on his behalf.

7             MS. RUBINO:  Good morning your Honor.  Stacy

8    Rubino appearing for the People.  I'd request that an

9    investigating officer be allowed to sit in with me.

10            THE COURT:  Any objection?

11            MS. OWENS:  No and I ask tat all other witnesses

12   be excluded.

13            MS. RUBINO:  Sergeant Moe Reyes will be my

14   investigating officer.

15            THE COURT:  And there will be no other witnesses?

16            MS. OWENS:  I have another witness, I'll have him

17   wait outside.

18            THE COURT:  Please have him wait outside.  All

19   right.  This is the defendant's motion pursuant to 1538.5

20   concerning probable cause and a possible knock notice

21   issues.  So how do you want to proceed?

22            MS. RUBINO:  The defense has the burden, your

23   Honor.

24            MS. OWENS:  We have a witness, your Honor.  We'd

25   like to call Jerry McNair please.

26            THE COURT:  Okay.  And is Mr. McNair your only

27   witness.

28            MS. OWENS:  That is correct.

Lydia E. Moseley, C.S.R. 12428

5

| | |
|---|---|
| 1 | THE COURT: Mr. McNair please step forward. |
| 2 | Please raise your right hand. |
| ~~3~~ | JERRY ROOSEVELT MCNAIR, |
| 4 | called as a witness on behalf of the People, was sworn and |
| 5 | examined and testified as follows: |
| 6 | THE COURT: Mr. McNair when you're comfortable, |
| 7 | please state your full name and spell your name for the |
| 8 | record. |
| 9 | THE WITNESS: Full name Jerry, J-e-r-r-y; |
| 10 | Roosevelt, R-o-o-s-e-v-e-l-t; McNair, M-c-N-a-i-r. |
| 11 | THE COURT: Thank you. Ms. Owens |
| 12 | DIRECT EXAMINATION |
| 13 | BY MS. OWENS: |
| 14 | Q. Good morning, Mr. McNair. |
| 15 | A. Good morning. |
| 16 | Q. What is your occupation? |
| 17 | A. Work for Santa Clara County Probation Department. |
| 18 | Q. Okay. And do you know this gentleman who's seated |
| 19 | here, Mr. Hernandez? |
| 20 | A. Yes, I do. |
| 21 | Q. And do you have a business relationship with Mr. |
| 22 | Hernandez? |
| 23 | A. Yes. |
| 24 | Q. In the year 2003 did you have a business |
| 25 | relationship with Mr. Hernandez? |
| 26 | A. Yes. |
| 27 | Q. Could you please explain for us what the nature of |
| 28 | that relationship was in 2003? |

6

1    A.   Yes the nature of our business was tax related

2    purpose and that's it.

3    Q.   Okay.  Is it fair to say that he did your taxes for

4    you?

5    A.   Correct.

6    Q.   Where did you go to have your taxes done by Mr.

7    Hernandez?

8    A.   To his home slash place of business.

9    Q.   Okay.  Do you know the address?

10   A.   Not offhand, no I don't.

11   Q.   Is it a house on Warmsprings Drive?

12   A.   Yes, off of McKee, yes.

13   Q.   Were you present at Mr. Hernandez's home in 2003

14   when San Jose police officers searched his home?

15   A.   Yes.

16   Q.   Okay.  Can you tell us about that?

17   A.   Yes.  The only thing I can basically state is we

18   were there, myself along with Mr. Hernandez, doing my

19   taxes when the police slash detectives entered his home.

20   Q.   When they entered his home were they wearing

21   uniforms or were they dressed in plain clothes?

22   A.   Plain clothes.

23   Q.   When they entered his home could you see any

24   weapons?

25   A.   Yes.

26   Q.   Would you please first tell me the number of

27   officers that you saw?

28   A.   To the best of my recollection I'm assuming it was a

1    anywhere between four and six officers.  To be exact, I'm

2    not exactly sure.

3      Q.  Okay.  Can you please describe for me the weapons

4    that you saw?

5      A.  Well just with my background I'm assuming they were

6    all Glock 23's but I'm not exactly sure.

7      Q.  Okay.  And your background is law enforcement

8    background?

9      A.  Yes.

10     Q.  As the officers entered the house did you see the

11   weapon or did they come in later and pull the weapons?

12   Can you describe that for us in a little more detail?

13     A.  The weapons were drawn and we were -- I could only

14   speak for myself, I was terrified.

15     Q.  And you said there were four to six officers.  How

16   many of those four to six officers had weapons drawn?

17     A.  If it was six, four.

18     Q.  Okay.  I want to go back to the point in time they

19   entered the house?

20     A.  Okay.

21     Q.  How is it that you knew that they were inside the

22   house?

23     A.  They were standing right in front of me.

24     Q.  Okay.

25     A.  No way to avoid that one.

26     Q.  Okay.  Before they standing right in front of you,

27   did you hear them knock at the door?

28     A.  No, I didn't.

8

1    Q.   Before they were standing right in front of you, did

2    you hear any of the People in plain clothes with weapons

3    announce who they were?

4    A.   No, I didn't.

5    Q.   And right before they came in the door with their

6    weapons drawn, where was Mr. Hernandez?

7    A.   He was sitting diagonal in front of me in front of

8    his computer.

9    Q.   Did you loose visual contact with Mr. Hernandez at

10   any point immediately before the four to six men who came

11   to the house?

12   A.   Not to my knowledge.  He was sitting right in front

13   of me and this is not the question but the door was to the

14   right of me, no.

15   Q.   Okay.  After they came in the house what happened

16   next?

17   A.   Next thing that happened as I previously stated

18   weapons were drawn, nobody move, nobody move, I definitely

19   wasn't going to move.

20   Q.   Okay, what happened after that?

21   A.   They proceeded to ask several questions as far as

22   they wanted to know if any drugs were in the home and I

23   gave them information that I have idea, I have no

24   knowledge of what's going on.  I definitely didn't have

25   anything to do with whatever was going on and I told them

26   that I had ID as far as my badge and everything and that

27   was it.

28   Q.   So you said that you had ID, I'm assuming from what

1   you said at some point in time they told you they were

2   police officers?

3       A.   At that point yes, I knew, but yes.

4       Q.   When did they say that?

5       A.   It was evident but after they were already in the

6   home.

7       Q.   So the identification they we're police officers was

8   after you had already seen the weapons and after they were

9   in the house?

10      A.   Yes.

11      Q.   After you identified yourself as a person with law

12   enforcement status, did you see them search the home?

13      A.   I saw them proceed to search the home but I wasn't

14   there when they actually did search the home, no.  I

15   wasn't there.

16      Q.   As they proceeded to search the home was Mr.

17   Hernandez still in a place where you could see him?

18      A.   Yes.

19      Q.   Okay.  Before they proceeded to search the home did

20   they show a warrant to Mr. Hernandez?

21      A.   Not in my presence.  I can't speak for what was

22   shown after I left.  They, meaning the officers, let me

23   gather my things after I definitely did ask for permission

24   to reach for my badge, they let me gather my things and

25   instructed me I was free to go.  They told me right away

26   that they knew I had nothing at all to do with what was

27   going on.  They let me reach for my badge, showed them my

28   badge, they let me gather my things and I left.

1    Q.   Did you leave the room -- other than leaving the

2    house, did you leave the room where Mr. Hernandez was

3    during the point in time that you just described?

4    A.   Yes.

5    Q.   When was that?

6    A.   After I gathered my things.  When did I leave?

7    Q.   Yes.

8    A.   After I gathered my things.

9    Q.   But you were present when they began the search of

10   the house?

11   A.   Yes.

12        MS. OWENS:  Okay.  I have nothing further. Thank

13   you.

14                    CROSS-EXAMINATION

15   BY MS. RUBINO:

16   Q.   Mr. McNair, I have a few questions for you.

17   A.   Okay.

18   Q.   How long have you been employed by the probation

19   department?

20   A.   Nine and a half years approximately November of '94.

21   Q.   And where are you currently assigned?

22   A.   Men's work furlough in Mountain View, California.

23   Q.   How did you meet the defendant?

24   A.   Through family, tax purposes only.

25   Q.   Some of your family members knew him?

26   A.   Correct.

27   Q.   And are any of your family members friends of his?

28   A.   Other than tax related purposes?

Lydia E. Moseley, C.S.R. 12428

1    Q.   Yes.

2    A.   No, not to my knowledge.

3    Q.   How long have you known the defendant?

4    A.   Approximately, I want to say three years.

5    Q.   And have you been to his house on more than one

6    occasion?

7    A.   Yes.

8    Q.   And can you tell me how many times you've been to

9    his house and/or business?

10    A.   Approximately maybe five, six times.

11    Q.   Have you ever been to his home other than to get

12    your taxes done?

13    A.   No, I have not.

14    Q.   How many times a year do you get your taxes done?

15    A.   One time.

16    Q.   And you said you've only known him for three years?

17    A.   Correct.  If I may state --

18    Q.   There's actually question pending, Mr. McNair.

19    A.   No problem.

20    Q.   When you -- can you tell us the date that you were

21    there when you say that San Jose police officers entered

22    his residence?

23    A.   No, I cannot.

24    Q.   Do you recognize this officer to my left?

25    A.   Yes I do but not necessarily from Mr. Hernandez's

26    home.

27    Q.   So you can't tell us when that search occurred that

28    you've testified to here today?

1   A.   I don't know the exact date, I haven't seen any of

2   the paperwork.

3       Q.   Can you tell me what month it occurred?

4       A.   I believe it was in April.

5       Q.   Okay.   And you don't recognize this officer as one

6   of the officers that was present during the search?

7       A.   No.

8       Q.   Isn't it true that some of the officers that were --

9   that arrived at the residence on the day that you were

10  there were actually clothed in some type of either raid

11  gear or some time of law enforcement clothing and some

12  officers where in plain clothes?

13      A.   Correct, I mean, they had on vests.

14      Q.   So they had on vests that announced police, had some

15  kind of insignia on it that made you think it was police

16  vest?

17      A.   I'm not necessarily sure to that knowledge.

18      Q.   Would it be a bullet proof vest?

19      A.   Correct.

20      Q.   Would it be the same type that probations officers

21  where when they conduct searches?

22      A.   Correct.

23      Q.   So when you saw them did you immediately recognize

24  them as some type of law enforcement personnel based on

25  their clothing?

26      A.   Correct.

27      Q.   Okay.   So you knew they were law enforcement before

28  they entered the house?

1     A.    Not before they entered the house because I didn't
2     see them before they entered the house.

3     Q.    As soon as you saw them could you recognize them as
4     law enforcement?

5     A.    I could, yes.

6     Q.    The actual room that you were in would it be
7     considered the business portion of the defendant's home?

8     A.    Correct.

9     Q.    And is it a converted garage?

10    A.    Correct.

11    Q.    Is it attached to the home?

12    A.    Yes.

13    Q.    Does it have a separate entry or door in which you
14    could enter other than going through the house?

15    A.    Yes.

16    Q.    And is there anything in that room other than
17    business type furniture things of that nature there's no
18    bed, there's no fridge or anything like that?

19    A.    Not to my knowledge, no.

20    Q.    And each time that you've gone to the defendant's
21    home to have your taxes done, did you always go into that
22    garage business?

23    A.    No.

24    Q.    Did he ever do your taxes in another portion of the
25    home?

26    A.    Yes.

27    Q.    Okay.   When you were there on the day that you're
28    talking about, was the interior door that's normally wood

1    or plywood, was that open?

2          THE COURT:  I don't understand the question, the

3    interior door that's normally wood or plywood?

4    Q.  (By Ms. Rubino.)  The door of this garage, does it

5    face the street?

6    A.  Yes.

7    Q.  And what kind of door is it?

8    A.  To my knowledge it's a converted screen door, to my

9    knowledge, I mean, I haven't been there since that day.

10   Q.  What do you mean a converted screen door?

11   A.  A normal garage door is a door that opens up, cars

12   can enter.  This door is not as such, this door is a

13   normal door as that one is.

14   Q.  Right.

15         THE COURT:  And the record will reflect that the

16   witness looked at a three by -- the entry door into the

17   courtroom when he made that reference.

18         THE WITNESS:  Yes.

19   Q.  (By Ms. Rubino.)  So there's not a huge garage door

20   that lifts in some way in such that you'd be able to drive

21   a car in.  Correct?

22   A.  No.

23   Q.  The door that's there however, it being a normal

24   type of door that you would have on the front of a house.

25   What kind of door is it if you could remember?

26   A.  To my knowledge it's a screen door.

27   Q.  And only a screen door?

28   A.  I don't know your definition of screen door.  My

1    definition of screen door describing a door that was there

2    is you can see out vaguely but I don't know if you can see

3    directly in, that's the style of screen door.

4        Q.   And there's no like wood door that you could not see

5    through?

6        A.   Like a normal garage door?

7        Q.   Like a normal door.

8        A.   No.

9        Q.   So it's not any -- it's not a door such as this that

10   you would not be able to see out of?

11       A.   No.

12       Q.   Is it a door that you can see through?

13       A.   Correct.

14       Q.   On that day was that door open or closed?

15       A.   Okay.  My definition of open or closed, it was not

16   wide open as this in the courtroom but it was open as

17   though you can walk up to the door and open it up, in that

18   sense, so if you mean that, yes.

19       Q.   The door closed but it was not locked?

20       A.   Correct.

21       Q.   You said that you assumed that there were four to

22   six officers.  What are you basing that assumption on?

23       A.   To the best of my recollection.  I can't give you an

24   accurate number that was over a year ago.

25       Q.   Okay.  It's not based on any personal knowledge

26   about how many officers normally the probation department

27   uses when they conduct searches?

28       A.   No, not necessarily.

16

1    Q.   You also said you assumed that their weapons were

2    Glocks, is that based on your experience with law

3    enforcement?

4    A.   Slightly and just because I know that's one of the

5    weapons that the officer do carry.

6    Q.   And you seem to think that if there were six

7    officers only four of them had their guns drawn?

8    A.   Possibly, yes.

9    Q.   Do you have a fairly nonspecific memory about this

10   incident?

11   A.   As far as --

12   Q.   Is seams that you're making a lot of assumptions or

13   you're having difficulty remembering --

14        MS. OWENS:   Objection.  Argumentative.

15        MS. RUBINO:   -- problems remembering how many

16   officer were there and how many officer had their guns

17   drawn.

18        THE COURT:   Sustained.  The statement will be

19   stricken.  The question stands.  You can answer the

20   question.

21        THE WITNESS:   I'm not having any problems

22   answering the question but I do not know specifically the

23   exact number of officers that were there.  I know it was

24   more than two, I know it was less than ten.

25   Q.   (By Ms. Rubino.)  Can you remember how many of those

26   officers had their guns drawn?

27   A.   Exactly, no.

28   Q.   And they were all handguns, the handguns that were

Lydia E. Moseley, C.S.R. 12428

17

1   drawn?

2       A.   Yes.

3       Q.   Now the layout of this garage, if I were standing at

4   front door, where would you have been?  Would you have

5   been to my right or to left if I was standing at the door?

6       A.   It depends on if you're facing in or out.

7       Q.   I'm facing in.

8       A.   Facing in it'll be straight away probably to your

9   left.

10      Q.   Slightly to my left?

11      A.   Yes.

12      Q.   Could you see -- were you faced towards the door

13  where you were sitting?

14      A.   No, I was not.

15      Q.   Your back was away from the door?

16      A.   No.  My side was to the door.

17      Q.   Okay.  So you were sitting like this and here's the

18  door.  Correct?

19      A.   If I'm sitting this way the door's here.

20           MS. RUBINO:  Your Honor, for the record he's

21  indicating the door was directly to his right.

22           THE WITNESS:  To my right side.

23           THE COURT:  So his right side.

24      Q.   (By Ms. Rubino.)  And I take it before the officers

25  were in the house you were not looking in the direction of

26  that doorway?

27      A.   No, I was not.

28      Q.   Where the defendant was sitting, was he facing

Lydia E. Moseley, C.S.R. 12428

1    towards the door?

2    A.   No, he was not, not to my knowledge, no.

3    Q.   Was there a radio or TV playing when you were there,

4    if you can recall?

5    A.   To my knowledge the only electronic equipment that

6    was on was the come computer.  I don't recollect the TV,

7    television or a radio being on at the time, no.

8    Q.   Were you and the defendant discussing taxes, things

9    like that at the time that the entry occurred?

10   A.   Yes.

11   Q.   After the officers entered the home or the business,

12   how long did it take you before you left?

13   A.   To the best of my knowledge approximately ten maybe

14   15 minutes at the most.

15   Q.   Prior to you leaving, did any of the officers leave

16   the actual business -- the garage location where you were?

17   A.   To search the home yes but as far as leave as far as

18   leave the whole residence, the entire residence, I'm not

19   sure about that one.

20   Q.   You yourself remained in the garage the entire time

21   until you left the residence.  Correct?

22   A.   Correct.

23   Q.   Is there a door from the garage into the home?

24   A.   Yes.

25   Q.   Did you see officers go through that door?

26   A.   Yes.

27   Q.   And do you know whether or not they were going

28   through that door in order to search or in order to secure

19

1  the premises for their safety?

2  A.  I can assume, I cannot actually answer that question

3  because I wasn't one of the officers.  I would assume that

4  they were going in to secure the premises and also search

5  but I don't know the correct answer that you want to hear

6  on that one.

7  Q.  So you didn't hear any dialog from any of the

8  officers about we're going to go search the home now as

9  opposed to we're going to go secure it first for safety

10  purposes?

11  A.  No, I did not.

12  Q.  Have you ever conducted a search?

13  A.  Yes, I have but at the same time I know it's

14  protocol but I can't answer that because I don't know.

15  Q.  Right.  But as an officer you know that when you do

16  go into a home it's important to search the entire

17  residence to make sure there are no other suspects there's

18  nobody in the home with a weapon, there's no dogs that

19  might bite a officer; isn't that true?

20        MS. OWENS:  Objection.  Relevance and

21  argumentative.

22        THE COURT:  Just tell me how it's relevant.  It's

23  not argumentative, but tell me how it's relevant?

24        MS. RUBINO:  This officer he's not offered as an

25  expert but he can clearly give his opinion as a lay person

26  who's done searches how important it is to secure the

27  residence.

28        THE COURT:  Sustained.

20

1      MS. RUBINO:  I have nothing further, your Honor.

2   Thank you.

3      THE COURT:  Anything further, Ms. Owens?

4      MS. OWENS:  No, thank you.

5      THE COURT:  May this witness be excused?

6      MS. OWENS:  We would ask that he remain subject

7   to recall just for a few more minutes, please.

8      THE COURT:  Then I'm going to have to send him

9   outside.

10      MS. OWENS:  That's fine.

11      THE COURT:  All right.  So I need to admonish

12   you.  You may not discuss your testimony or testimony of

13   any other witnesses until you're released as a witness

14   from this hearing.  Do you understand that?

15      THE WITNESS:  Yes, no problem.

16      THE COURT:  Please wait outside in the hallway.

17   Does the defense have further witnesses to present at this

18   time?

19      MS. OWENS:  No, thank you.

20      THE COURT:  All right.  The defense rests.

21      MS. OWENS:  Yes.

22      THE COURT:  Do the People wish to present

23   evidence at this time?

24      MS. RUBINO:  Yes, your Honor.  Thank you.

25   Q.  (By Ms. Rubino.)  The People call sergeant Reyes to

26   the stand.

27      THE COURT:  Sergeant please step forward.

28   ///                                          ///

21

1          MOISES REYES,

2   called as a witness on behalf of the People, was sworn and

3   examined and testified as follows:

4          THE COURT:  Sergeant, please take a seat.  When

5   you're comfortable, please state your full name and spell

6   it for the record.

7          THE WITNESS:  Moises Reyes.

8          THE COURT:  Thank you.  Counsel.

9          MS. RUBINO:  Thank you, your Honor.

10               DIRECT EXAMINATION

11  BY MS. RUBINO:

12     Q.  Sergeant, how long have you been a police officer?

13     A.  Over 23 years.

14     Q.  And how long have you been a sergeant?

15     A.  Since March of 1999.

16     Q.  What is your current assign?

17     A.  Special Operations, Metro Unit for the Bureau of

18  Field Operations.

19     Q.  How long have you been assigned to that task force?

20     A.  A little over two years.

21     Q.  What is it the predominant purpose of having the

22  metro unit?  If there is one?

23     A.  There is not one.  Actually we primarily focus on

24  quality of life issues with respect to the downtown area

25  which centers around prostitution, narcotics, but then

26  because of our special operations nature and our

27  availability for covert operations as well, plain clothes,

28  unmarked cars, we do a lot of dignitary protection, we

1   handle city counsel meetings, we do when the president

2   comes in and then when other units need assistance with

3   respect to securing a residence in the serving of search

4   warrants or arrest warrants, we assist in that respect.

5   Q.   In the two years that you've been a sergeant at

6   Metro, how many warrants do you think roughly you and your

7   unit have assisted in with the San Jose Police Department?

8   A.   Well I can speak for my team, and actually we have 7

9   teams in the Metro unit and so as a unit it would be a

10   significantly different number.  My team probably in the

11   two years that I've been there, we -- easily a dozen

12   search warrants.

13   Q.   And is it safe to say that you -- that neither you

14   or any of your officers are personally involved in the

15   current investigation that the other officers are

16   conducting upon the suspect, you're just there to assist

17   with a warrant.  Correct?

18   A.   We're there to assist with the service of the

19   warrant with respect to securing the residence and

20   assisting the investigators in that respect.

21   Q.   Okay.  So you typically do not know the specifics of

22   the on-going investigation other than what is necessary

23   for you to be safe during the service of the warrant?

24   A.   That's correct.

25   Q.   Are you familiar with all of the facts in the

26   Rodrigo Hernandez case pertaining to the investigation or

27   what he's charged with?

28   A.   No, ma'am.

Lydia E. Moseley, C.S.R. 12428

23

Q.   On May 27th of 2003 did you conduct or assist in a
warrant at 2990 Warmsprings Dive?

A.   Yes, ma'am.

Q.   And you assisted Detective Juan Serano on that
occasion?

A.   Yes, I didn't know that at the time.  I was -- the
person that was my contact with respect to sexual assaults
was Sergeant Joe Reyes and I believe Juan Serano worked
under his purview.

Q.   On that date can you recall how many officers were
present for the execution of this warrant?

A.   I don't have the exact number but it was in the area
of about a dozen with respect to securing the residence
and I can't speak to exactly how many sexual assault
people were there I know Sergeant Joe Reyes was there and
Investigator Serano.  Now if I may just clarify, they did
not participate in the entry of the residence, the
securing of the premiss, they came in afterwards.

Q.   Twelve officers, where would all of those officers
who participated in the securing of the residence, where
would they have been located if you can recall?

A.   I believe the anticipation prior to making the
contact at the residence was that the garage was going to
be the primary entry location although we were aware of
the standard front door that was west of the garage and so
a stick as they call it a group of officers was assigned
to advance toward the standard front door and another
group, and I'd say five officers, five to six officers at

Lydia E. Moseley, C.S.R. 12428

24

1   the standard what everyone would recognize as the front

2   door and then myself and four or five officers at the

3   garage door which was a wrought iron security screen door.

4   Q.   What time was it when you executed the warrant?

5   A.   I don't have that exact time but it was I believe it

6   was in -- I'd don't remember.

7   Q.   Was it daylight?

8   A.   It was daylight.

9   Q.   Okay.  Were you one of the officers that approached

10  the garage?

11  A.   Yes, ma'am.

12  Q.   Can you tell me what you saw upon approaching the

13  garage door?

14  A.   Well I saw the movement of my other officers moving

15  toward the regular front door, there were vehicles parked

16  in the driveway, we advanced from the east.  The residence

17  faces north sitting on the south side of the street so

18  we're move from an easterly location coming up toward the

19  driveway and trying to weave our way through the cars and

20  generally when we do advance on a residence we try to stay

21  unseen in order not to compromise our safety.  At the

22  point that I saw that the screen door was closed and that

23  was it, we moved up toward the door.

24  Q.   When you got to the door, Sergeant, could you see

25  inside the room?

26  A.   Very little if at all.  I could sense there was

27  someone in there because you could see shadows but you

28  can't really see inside one of those doors.

1    Q.   Could you hear voices?

2    A.   I heard sounds.  I don't -- it was really quick, it

3    was really rapid and the reason I say that is the

4    objective was to go up to the door, check it to see if it

5    was unlocked, otherwise in order to be able to force the

6    door we had to make preparations, I had an officer already

7    assigned carrying a what we call a hooligan tool which is

8    a prybar in order to be able to open that screen door

9    because those security doors generally pose a problem.  So

10   when we try the knob also at the same time sense that

11   there's someone immediately inside the door, by

12   immediately I mean within 15 feet, the door comes open, I

13   yell San Jose Police, search warrant, Officer Catrell

14   being the first officer going in is yelling San Jose

15   Police search warrant and it's our practice to do that

16   throughout the house, not just at the point of entry and

17   then it's not necessarily every officer yelling it but if

18   someone's not yelling it the third might be or the fourth

19   but at this point we were in close proximity so we were in

20   immediately.

21   Q.   Sergeant Reyes, is it safe to say that being

22   executing a search warrant once the party becomes aware of

23   your presence that's when you are and your fellow officers

24   are at the greatest risk?

25            MS. OWENS:   Objection.   Leading.

26            THE COURT:   Sustained.

27   Q.   (By Ms. Rubino.)   Sergeant Reyes, is there a concern

28   that you have as a sergeant when you approach a residence

Lydia E. Moseley, C.S.R. 12428

26

```
 1    and it becomes clear to you that the person inside will be
 2    able to see you on the outside?
 3              MS. OWENS:  Objection.  Leading.
 4              THE COURT:  Overruled.
 5              THE WITNESS:  Yes.
 6         Q.   (By Ms. Rubino.)  What is that concern?
 7         A.   Safety.  I don't know what's inside.  I don't know
 8    the complexion or the make up of the individual, I don't
 9    know what else is going on.  Our objective is just to
10    secure the residence safely and so yes.
11         Q.   And did you do that on this occasion?
12         A.   Yes, ma'am.
13              MS. RUBINO:  I have nothing further, your Honor.
14    Thank you.
15              THE COURT:  Thank you.  Cross-examination, Ms.
16    Owens.
17              MS. OWENS:  Thank you.
18                        CROSS-EXAMINATION
19    BY MS. OWENS:
20         Q.   Good morning.
21         A.   Good morning.  How are you?
22         Q.   Did you write a report in connection with this
23    incident?
24         A.   No, ma'am.
25         Q.   And how many times have you talked to the District
26    Attorney about this incident?
27         A.   This morning and two weeks ago when we were here
28    when it got continued.
```

1    Q.   Okay.   And is this a incident that you thought about

2    often between May of 2003 and today?

3        A.   No, ma'am.

4             MS. OWENS:   Thank your.   Nothing further.

5             THE COURT:   Redirect

6                      REDIRECT EXAMINATION

7    BY MS. RUBINO:

8        Q.   Sergeant Reyes, when I contacted you did I ask you

9    about this search and any of your memory about it?   Was

10   that the nature of my question to you?

11       A.   Yes, ma'am.

12       Q.   And what you testified to here today, is that your

13   actual memory of what occurred on this occasion?

14       A.   Yes, ma'am.

15            MS. RUBINO:   Nothing further, thank you.

16            THE COURT:   Recross?

17            MS. OWENS:   No, thank you.

18            THE COURT:   May this officer step down?

19            MS. OWENS:   Yes.

20            THE COURT:   Thank you.   You may return to your

21   seat.   Do the People wish to present further evidence at

22   this time?

23            MS. RUBINO:   Your Honor, I have a question for

24   the Court.   The other officer only pertains to the issue

25   of timeliness of the warrant.   Now the Court does have a

26   copy of the search warrant which lays out all of the

27   probable cause --

28            THE COURT:   The probable cause issue about

28

1    whether or not it was three years, four years in the past.

2    There was no argument on that point but you're going to

3    argue it.

4                 MS. OWENS:   Yes.

5                 THE COURT:   Why would you put in evidence on that

6    point?

7                 MS. RUBINO:   I just want to make sure that the

8    Court does not have any question for the officer, the

9    affiant of the warrant.

10                THE COURT:   I don't.

11                MS. RUBINO:   Okay.   Then the People rest.

12                THE COURT:   All right.   The People rest.   Do you

13   wish to recall Mr. McNair.

14                MS. OWENS:   No.   May I release him.

15                THE COURT:   You may.

16                MS. OWENS:   Thank you.

17                THE COURT:   All right.   I'm ready to hear

18   argument.

19                MS. OWENS:   Thank you.

20                THE COURT:   I'll tell you to start Ms. Owens that

21   the stuff on probable cause my tentative ruling would be

22   to deny the motion on that grounds.   I think the cases

23   about drugs are far different where something can go away

24   pretty rapidly, drugs are consumed and their easily gotten

25   rid of, et cetera.   The testimony what was in the warrant

26   about the propensity of people who take images to collect

27   them and hang to them makes this a different kettle if

28   fish than the drug cases.   So that's where I'm coming



Lydia E. Moseley, C.S.R. 12428

29

1   from.

2           MS. OWENS:   And just for the record, your Honor,

3   I think that our position with respect to the staleness

4   of the warrant whether it was or was not is laid out in

5   our moving papers beginning on page three and I will

6   submit on those comments.

7           THE COURT:   All right.

8           MS. OWENS:   With respect to the adequate knock

9   notice in this case, the search begins when the officers

10  cross that threshold whether it is the officer who is

11  looking to retrieve a particular item or whether it is an

12  officer who is assisting that investigating officer really

13  is not the point of inquiry here.   The question is at what

14  point in time, under what circumstances are Mr.

15  Hernandez's rights to be safe and secure in his home

16  somehow trampled upon.   And in this case when those

17  officers came into the house, and based upon the testimony

18  of Mr. McNair, did not say anything that would lead the

19  owner of the home, the holder of the right, to understand

20  who they were, that on one point is a violation of the

21  knock notice requirement with no fact in this particular

22  case that would give that officer or any reasonable

23  officer reason to believe that under those circumstances

24  in this case because there were shadows in the room in the

25  daytime that the officer's safety would be at issue.

26          Also Officer McNair or Mr. McNair testified that

27  based on his training once he was able to see the

28  individuals which means after they broke the threshold,

1   after they came into the house, he was able to look at

2   them and see certain things that would cause him to

3   believe that they might be law enforcement.  That is not

4   compliance with the knock notice requirement when the

5   Court views it in light of the person who was the holder

6   of the right to be safe and secure in his home and also

7   taking into consideration that that identification as law

8   enforcement did not become apparent until after those

9   people were already in the house.

10          So based on all of those circumstances together

11   the circumstances in this case do not provide adequate

12   reason to fail to comply with knock notice.  Also the

13   circumstances were not such that the officers had to

14   invade the home in this way in order to preserve some sort

15   of evidence that was likely to be disposed of quickly.  In

16   fact, based upon the Court's comments and the affidavit

17   that is attached to the search warrant it's likely that if

18   the officers had knocked, had announced themselves, had

19   given Mr. Hernandez time to open the door whatever it was

20   that they were looking for probably still would have been

21   there.  So there are no circumstances in this particular

22   case that make it appropriate for these officers to act in

23   a way that they did and for that reason we're asking for a

24   suppression of all of the illegal fruits of their action.

25          THE COURT:  But they're not arguing at least

26   based on the hearing that there were exigencies that made

27   them enter and ignore the knock notice.  They're arguing

28   that knock notice was given based upon the testimony of

1   Officer Reyes.  All right.  I'll hear from the People.

2             MS. RUBINO:  First of all, your Honor, there's

3   two different issues the's defendant's right to be safe

4   from unreasonable searches and seizures is covered in this

5   case by the warrant.

6             THE COURT:  By the warrants.  I understand.

7             MS. RUBINO:  The officer obtained a warrant and

8   they have a right to be in that person's home.  The

9   purpose of knock and notice is for the security purposes

10  of both the officers serving the warrant as well as the

11  occupants within the home.  What the knock and notice

12  requirement does is puts people on notice there are

13  officers to serve a warrant, allows them a reasonable time

14  to respond and if not for the officers to use force to

15  enter the home.  That is for the purpose that the people

16  inside the home will not be surprised and use some type of

17  violence that will then be met by violence by law

18  enforcement.

19            There is a case directly on point with the

20  circumstances in this case which is unfortunately I did

21  not put in my moving papers because I found it after I

22  wrote my moving papers but it is People V George Uhler,

23  U-h-l-e-r, 208 Cal.App. 3d 766, have provided the cite to

24  defence counsel.  It's a very brief case, your Honor, but

25  it talks about a situation where officers approach the

26  front entry after home in order to serve a warrant and

27  they see that through a closed screen door there are

28  people inside and they are seated on a couch, at that

32

1   point they demand entry without waiting for a response and

2   opened the screen door themselves and enter into the

3   residence.  And the Court has found that is perfectly

4   acceptable and lawful and they believe the entry in the

5   case was lawful both under state and federal

6   constitutional requirements.  And what they say is that

7   they find the entry lawful because the purpose of the

8   statute, the knock and notice statute, has been satisfied,

9   the protection of privacy, the protection of the innocent,

10  and prevention of incidents likely to lead to violence.

11       And likewise in this case the officers first of

12  all approached wanting to test the door to see if they

13  were going to need to use force to enter if necessary.

14  When they walk up to the residence it becomes extremely

15  clear immediately that there are people inside that will

16  be able to notice their presence because the officers can

17  notice that there are people inside of the room through

18  this screen door that is somewhat visible or transparent.

19  At that point the officer tries the doorknob, the door is

20  open, he immediately announces San Jose Police, we are

21  here for a warrant, notifying the occupants of their law

22  enforcement status was well as their purpose for being

23  there to serve a warrant, not only did this officer notify

24  the occupants but a second officer immediately also

25  notified San Jose Police we're here to serve a warrant.

26  That satisfies the knock and notice requirement.

27       The fact that did they did not wait to be allowed

28  in is okay for the purposes of securing the safety of both

1   the officers and the occupants of the house and Uhler
2   clearly holds that and also cites to a second case of
3   Peterson where exactly the same situation happened, they
4   opened the screen door, the stepped inside and Uhler talks
5   about the Peterson case and how that also was a valid
6   entry and the warrant was not invalid by that lack of
7   knock and notice, a specific knock and notice
8   requirement -- sorry. Thank you, your Honor.
9           THE COURT:  Thank you.  Ms. Owens.
10          MS. OWENS:  Thank you, your Honor.  This case is
11  distinct from Uhler and Peterson because in Uhler and
12  Peterson the officers were clearly from the facts of those
13  cases visible to the occupants of the house.  They
14  announced who they were outside of the of the home and
15  there was some although not a great amount of time there
16  was some time that elapsed between that announcement and
17  the going into the home.  What the Court said in Uhler was
18  that based upon those facts the fact that the occupants
19  clearly could see the officers, it made the whole knock
20  notice, the verbatim knock notice requirement sort of
21  irrelevant because they could see who was out there, they
22  knew who was there.  That's not the case here.  Based upon
23  the testimony of Officer McNair he could not see who was
24  outside, he did not see who was outside and Mr. Hernandez
25  who was further from the door than Mr. McNair and working
26  on the computer was not in a position where he could see
27  or acknowledge that police officers were outside therefore
28  the knock notice requirement was not made irrelevant in

34

1    this case, it still stands and it's violated.

2            THE COURT:  Thank you.  Submitted.

3            MS. OWENS:  Yes.

4            MS. RUBINO:  Submitted.

5            THE COURT:  If I accepted the testimony of

6    Probation Officer McNair, I'd reach a different result,

7    but I accept the testimony of police officer Reyes.  Mr.

8    McNair was clearly frightened as anyone would be, his

9    memory was affected by that fear, he doesn't remember what

10   month it occurred in.  I think Officer Reyes has a more

11   reliable memory I accept Officer Reyes' testimony.  I

12   think there was substantial compliance with the knock

13   notice requirement.  The motion is denied.  And the motion

14   on the probable cause portion of the motion is denied as

15   well.

16           MS. OWENS:  Thank you.

17           THE COURT:  Thank you.

18           MS. RUBINO:  Thank your, your Honor.

19                       ---oOo---

20

21

22

23

24

25

26

27

28

35

STATE OF CALIFORNIA      )
                         )  ss.
COUNTY OF SANTA CLARA     )


     I, LYDIA E. MOSELEY, CSR, HEREBY CERTIFY:

That I was the duly appointed, qualified shorthand

reporter of said court in the above-entitled action taken

on the above-entitled date; that I reported the same in

machine shorthand and thereafter had the same transcribed

through computer-aided transcription as herein appears;

and that the foregoing typewritten pages contain a true

and correct transcript of the proceedings had in said

matter at said time and place to the best of my ability.

     I further certify that I have complied with

CCP 237 (a)(2) in that all personal juror identifying

information has been redacted if applicable.

     DATED:   February 8, 2005.


                         Lydia E. Moseley, CSR
                         Certificate No. CSR 12428

# ATTACHMENT



Supporting cases, rules, or authority
on Grounds for Relief

Ground 1 of 4

Continue from page (3) Three.

3. U.S. Constitution - 14th Amendment
4. California State Constitution
    a. Article I sections
       ① Section 1.
       ② Section 7 (a)
       ③ Section 15

⑤ Kimmelman v. Morrison; 477 U.S. 365, 106 S.ct.
   2574, 91 L.Ed 2d 305 (1986); "counsel conducted
no pretrial discovery and failed to file a timely appeal. on
suppression of evidence denial.

⑥ Brown v Myers, 137 F.3d 1154 (9th Cir. 1998)
   counsel fail to investigate and present available
   testimony supporting petitioner motion.

④ California Rules of Court (CRC); rule 31(b)
⑧ CRC rule 31(a)
⑨ Penal Code (PC) section 1240 - duties of attorney.
⑩ People v Diehl (1964) 62 Cal.2d 114 [41 Cal Rptr 28]];
⑪ People v Ribero (1971) 4 Cal. 3d 55 [92 Cal. Rptr. 69.
⑫ People v Serrano (1973) 33 Cal. App. 3d 331 [109 Cal
   Rpt. 30]

⑬ Lozada v Deeds (1991) 498 U.S. 430 [111 S. Ct. 860;
   112 L.Ed 2d 956 and Lozada v Deeds (9th Cir 199
   964 F.2d 956, 957-958

⑭ Roe v Flores-Ortega (2000) ___ U.S. ___ [120 S.Ct 1029;
   145 L.Ed. 2d 985]

7

# ATTACHMENT

# B

Supporting cases, rules, or authority on Grounds for Relief

Ground 2 of 4

*continued from page 42 (4)*

③ People v Serrano (1973) 33 Cal App 3d 331
    [109 Cal Rptr 30]

④ People v Baltor (1978) 77 Cal. App 3d. 227,
    230 [143 Cal Rptr 478, 479]

⑤ People v Scott (1998) 64 Cal App 4th 550
    563 [76 Cal Rptr 2d 315]

⑥ Castro v Superior Court (1974) 40 Cal. App
    3d 614 [115 Cal Rptr 312]

⑦ People v Tucker (1964) 61 Cal 2d 828
    [40 Rptr. 609]

⑧ People v Diehl (1964) 62 Cal 2d 114
    [4 Cal Rptr 281]

⑨ In re Jordan (1992) 4 Cal 4th 116
    [113 Cal Rptr. 878]

4

'Extreme violation(s) of Knock-notice Rule.

a. <u>supporting facts</u>

1. Search warrant dealth with stale evident. information
2. Illegal search procedures by officers executing search warrant
3. Officer(s) admitted immediate entrance to home inducing unsafe sitution to home owner, guest, and officers.

b. <u>supporting cases, rules, or other authority.</u>

① United States Constitution - (U.S. Const) 4th Amendmen
② U.S. Const. - 14th Amendment
③ California State Constitution - (Cal St const.) - Article I
   a. Section 1
④ U.S. Const - 9th Amendment.
⑤ Federal Rules of Criminal Procedure (FRCP) Rule 4
   "immediate entrance into home to execute a search warrant without waiting a reasonable period of time from home owners is 5 to 10 seconds"
⑥ U.S. v Bustamente-gamez; Ca 9 (Cal) 1973, 488 F.2d
   centiorari denied. 94 S.ct. 1993, 416 US 970, 40 L.Ed 2d 559 - "protects sudden and violent entry.
⑦ U.S. v Fernandez; N.D Cal. 1976, 430 F.Supp 794
⑧ U.S. v Remigio; C.A 10 (Kan) 1985 767, F.2d. 730
   certiorari denied. 106 S.ct. 535, 474 U.S. 1099 88, L.Ed. 2d. 465.

continue page 6

Continued to page five (5)

5. supporting cases, rules, or authority · for ground 3 of 4

⑨ U.S v Little C.A. 9 (Cal) 1984 753 F.2d 1420
"If officers are refuse, entry may break door"

⑩ Bonner V Anderson, CA 4 (Va) 1996, 81 F.3d 472

⑪ U.S V Moore ; 91 F.3d 96, 97 (10th Cir. 1996)

⑫ U.S V Place ; 462 U.S. 696, 706-07 (1983)

⑬ U.S V. Bates ; 84 F.3d 790, 796 (6th Cir 1996)

⑭ U.S. V Valdez ; 302 F.3d 320, 322 (5th Cir 200)

⑮ U.S V Banks , 124 S.Ct. 521, 523, 527 (2003)

⑯ Miller V U.S. 357 U.S. 301 (1958)

⑰ Richards V Wis ; 520 U.S. 385, 392-94 (1997)

Grounds for Relief 4 of 4

officers exceded scope of search warrant affadavit.

a. supporting facts:

1. Officers confiscated adult videos of another person living in house

2. Illegally search a dresser drawer of domestic partner of owner without consent.

s. supporting cases, rules, or other authority

(1.) U.S. Constitution - 4th Amendment

(2.) U.S. Constitution - 6th Amendment

(3.) federal Rule · criminal procedure (FRCP) Rule 41 (e)(2) · warrant must identify the person(

(4.) FRCP - Rule 41 (b)(1) - warrant [must] contain the defendant(s) name or description.

(5.) FRCP - Rule 41 (c)

(6.) U.S. v foster, 100 F.3d 846, 849 - 852 (10th Cir 1996)

(7.) Ill. v gates; 462 U.S. 213 (1983) at 238-39

(8.) U.S. v Weidul; 325 F.3d. 50. 54 (1st Cir 2003) "search without consent · not voluntary "

(9.) giordenella v U.S. 357 U.S. 480 (1958)

(10.) Aguilar v Tex, 378 U.S. 108, 109, 111 - 113 (1964

(11.) U.S. v Schultz, 14 F.3d. 1093, 1097 - 98

(12.) U.S. v Adams, 110 F.3d. 31, 33 (8th Cir 1997)

RODRIGO HERNANDEZ

V54637  B2-146

SALINAS VALLEY STATE PRISON

PO BOX 1050

SOLEDAD, CA 93690-1050

ATTORNEY, PER SE

**FILED**

FEB 6 2007

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
By _____ Deputy
S. Chua

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| In re<br><br>Rodrigo Hernandez<br><br>on Habeas Corpus | NO.<br><br>PETITION FOR WRIT OF HABEAS CORPUS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |

## I.

## INTRODUCTION

1.  Petitioner was convicted on Five Counts, Count One, two, and Three were under Penal Code section 269. Count One, Penal Code section 261, subdivision (a)(2); Count Two, Penal Code section 289, subd. (a); Count Three, Penal Code section 288(a). Count Four, Penal Code section 288.2 subd (2) and Count Five, Penal Code section 311.4 subd. (c.).(1CT 199-203, 207)

2.  On September 9, 2004, petitioner was sentenced to consecutive terms of 15 to live for each of Count One, Two, Three; the midterm of two years for Count Four; and one-third the midterm of for Count Five, for the total of

1.

1  45 to live. (2 CT 393-398)

2      3.   On June 14, 2006, on direct appeal in the
3  Sixth Appellate District, the court order the judgement
4  be modified to stay the two-year sentence on Count Four,
5  (Sixth Appellate District case No. H027955 (Santa Clara
6  County, Superior Ct. No CC315300))

7      4.   During trial, prosecution adamantly utilize
8  evidence seize during the execution of the search warrant
9  conducted on May 27th of 2003, to peruade the jury
10 for a conviction.

11     5. Petitioner maintains that the results of ineffective
12 counsel, obvious violation of the Knock-notice rule and
13 the motion to suppress for probable cause and Knock-
14 notice violation being decided of prosecution was
15 erroneous. All directly lead to a unjust conviction.

16

17                **II.**

18           **PARTIES**

19     6.   Petitioner, Rodrigo Hernandez, is a prisoner
20 of the State of California presently incarcerated at
21 Salinas Valley State Prison. He is 58 years old, under
22 Doctor's care for Post Traumatic Stress Disoder (PTSD)
23 extreme back pain and a severe case of feet fugus, due
24 in part while serving in the U.S. marine in Viet Nam
25 from 1969-70. Petitioner also suffers from Type II
26 diabetes.

27     7. People of California.

28

                      2

# III

## STATEMENT OF FACTS

8.  A Constitution right is a person is presume innocent until proven guilty by a jury of his peers base on factual evidents presented during trial. (U.S. Cons Ad. 4th) The prosecution has the burden of proof that the defendant did commit charges upon the defandant by producing evidents. Evident are produck by way of a search warrant execution. Officers are anad must perform these duties within guidelines. (Federal Rule - Criminal Procedure (FRC) 41(b)(1); (c); (e)(2)).

9.  Accordingly, Officer Serrano, stated while under oath, that adult videos were and the property in which they were located belong to defendant's common law wife. Clearly a violation and over extended the scope of the warrant. (US v Schultz, 14 F.3d 1093, 1097-98, (6th Cir 1994)).

10. The judge decision in siding with the prosecution was in err. (RTP may 21, 2004, p34, L 5-6 and L 10-13)

11. Officers violated the Knock-notice rule by opening and entering petitioner home before announcing who they were and not waiting any reasonable time for petitioner to respond. (US Const. Admendments 4, 6, 9, and 14; Cal.Const. Art. 1 sections 1, 7(a), 15, and 14).

12. Appointed public defender failed to timely file an appeal nor advise the defender correctly when appeal needed to be file. Attorney contines

3.

to be ineffective by not providing petitioner with documents or transcripts pertaining to numerous requests over the last 4 years.

IV.

### CONTENTIONS

DENIAL OF PETITIONER 1538.5 MOTION, INEFFECTIVE COUNSEL, JUDGE'S ERR AND VIOLATION OF KNOCK-NOTICE RULE DIRECTLY LEAD TO INFLUENTING THE JURY TO CONVICT PETITONER.

V.

### REQUEST FOR RELIEF

Petitioner is without remedy save for habeas corpus. According, petitioner prays the Court.

1. Issue a writ of habeas corpus;
2. Issue an order to Show Cause;
3. Declare the rights of the parties;
4. Reverse 1538.5 decision
5. Immediate release of petitioner
6. Appoint Counsel or award reasonable attorney's fees;
7. Grant any and all other relief found necessary or appropiate.
8. Restore petitioner all rights and priveleges.


Dated February 1st 2007

Rodrigo Hernandez

4.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

## INTRODUCTION

United States citizens are guarantee spefic rights. Right of innocence until proven guilty, right to counsel, right to privacy and the right to a fair trial. (U.S.Const. Amendments, 4, 6, 9, 14th.) These rights did not come easy. Many military personnel died defending thes right. I too, had the honor of fighting for these rights as a U.S. Marine in the Viet Nam War.

Any wrongful abuse and neglect of these rights is truly a disgraceful disregard to those who gave their lives and those who served defending those rights. Such is the case now being presented.

The prosecution has the burden of prove, by way of factual evidence, to convince a jury that the defendant did in fact, commit said charges alledged against him. Without evidence, it's extremely difficult for the prosecution to gain a guilty verdict.

The defendant, without proper and competent counsel will in doubtably be convicted. The appointed attorney fail to properly investigate and present all available testimony supporting defendent's innocence. (Brown V Myers, 137 F.3d 1154 (9th Cir 1998); Kimmelman V Morrison, 477 US 365, 106 S.Ct 2574, 91 L.Ed 2d 305 (1986)

5.

1  Officers executing search warrant must
2 comply with rules and regulations governing procedures
3 while conducting search warrant. (U.S. Const. Admendments
4 4, 6, and 14th, Cal. Const. ART. 1, sections 1, 7(a),
5 and 24; US v Banks, 124, S.ct 521-523, 527 (2003);
6 US v Foster, 100 F.3d. 846, 849-852, (10th Cir 1996);
7 US v Weidul, 325 F.3d 50, 54 (1st Cir 2003); Richards v
8 Wis, 520 US 385, 392-94 (1997); Bonner v Anderson,
9 CA 4 (Va) 1996, 81 F.3d 472; US v Schultz, 14 F.3d 1093,
10 1097-98 (6th Cir 1994); US v Place, 462 US 696, 706-
11 07 (1983); US v Fernandez, ND Cal 1976, 430 F Supp
12 794; FRC 41, 41(b)(1), 41(c), and 41(e)(2).
13      When both witnesses are creditable the
14 judge must side with the defendant. The defendant
15 witness testimony was unrehearsed and spondtaneous,
16 The prosecution discuss the case with their witness
17 the very morning of the hearing and again two weeks
18 prior (Reporters Transcript May 21, 2004, case no.
19 315300)
20              I
21      RESPONDENT CONTINUES TO CONFINE
22      PETITIONER DESPITE OBVIOUS KNOCK-NOTICE
23      VIOLATION, ILLEGAL SEARCH AND SEIZURE,
24      INEFFECTIVE COUNSEL AND JUDGE err BY
25      DENYING 1538.5 MOTION.
26 Petitioner was convicted and sentence to a
27 term of 45 to life. The assistant of ineffective
28 counsel most certainly contribute to his conviction.

6.

Evidence from a illegal search and seizure diretctly was use to convict petitioner.

By the judge making an err in his decision denyind 1538.5 motion, evidence was largely use to convict petitioner.

Our legal system is not perfect. Guilty people are found innocent. Innocent people are found guilty. We do have WAys to correct an injust convictions. The decision to correct this injustice is now yours to make.

The prosecuter relied heavily on the confiscatede evident through out the trial and in closing agruements. The owner of the evident would show propensity to commit alledge charges. The "OWNER" of the confiscated evident was the the petitioner common law wife who did not authorize officers to search her perrsonal belonging and she wasn't required to do so.


## CONCLUSION

For the reasons stated above, petitioner is entitled to reversal of his conviction, immediate release from prison. At the very lease return to court for retrial and release on reasonable bail.


Dated February 1st. 2007

Rodrigo Hernandez

7.

## VERIFICATION

I. RODRIGO HERNANDEZ, State:

I am the petitioner in this action. I have read the foregoing Petition for Writ of Habeas Corpus and the facts stated therein are true of my own knowledge, except as to matters that are therein stated on my own information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on Feburary 1st, 2007 at Salinas Valley State Prison, Soledad, California.

Rodrigo Hernandez
Petitioner
Attorney, Pro Se.

8.

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA

**SEARCH WARRANT**      $CSW32171$

THE PEOPLE OF THE STATE OF CALIFORNIA

To any Sheriff, Constable, Marshal, Policeman or Peace Officer in the County

of Santa Clara:

Proof, by affidavit, having been made before me this day by JUAN SERRANO

that there is probable cause for believing that evidence of the commission

of felonies, to wit: a violation of CALIFORNIA PENAL CODE SECTIONS 288(a),

more particularly described below and property used in the commission of

this felony will be located on the premises and person described below;


YOU ARE THEREFORE COMMANDED TO SEARCH THE FOLLOWING:

2990 Warm Springs Drive, San Jose, Santa Clara County, California, which premises is

described as followed;


A single-family dwelling located in a residential area of San Jose, on the south side of

Warm Springs Drive, East of Alpine Avenue and West of Challenger Avenue. There is

a red brick fireplace on the South/East side of the roof. The residence has green,

stucco exterior with white/yellow trim, a front door with a metal screen security door.

The address numbers 2990 is displayed in large, black metal lettering located on a

white, wooden post on the front of the house between the sidewalk, and curbside with a

sign hanging indicating that this is an accounting specialist business. The numbers

2990 are also spray-painted on the front curb. There is a converted garage with a white

door in the center, yellow trim with a black metal sign indicating that it is an office.

Above this door there is a cloth faded American flag.  There is a red abandoned Ford,

Mustang California plates 1HWC447 in the driveway. There is a large tree growing

between the curbside and sidewalk in front of the residence.

AND, any and all yards, garages, outbuildings, storage sheds, basements, attics,

crawlspaces, mailboxes, or trash containers assigned to, attached to, or located on the

above described property; for evidence of the commission of felonies and public

offenses to wit, violations of California Penal Code Sections 288(a) (CHILD

MOLESTATION),

Personal property described as follows:

1.      Articles of personal property tending to establish the identity of persons having
control of the property, vehicles, and areas being searched including, but not limited to
keys, business cards, names, pay stubs, utility bills, phone bills, mail, registration slips,
rent receipts, mortgage coupon books, bank statements, photographs, and other
personal papers;

2.      Sexually explicit materials including, but not limited to photographs, slides,
negatives, motion pictures, video tapes,  DVD's, magazines, magazine cutouts, and
books;

3.      Any pornographic material depicting or relating to minors whether or
not engaging in sexual conduct including, but not limited to motion
pictures, video tapes, DVDs, photographs, slides, negatives,
magazines, magazine cutouts, books, stories, or articles.

4.      Any diaries, journals, letters, notes, or stories, describing,
depicting, referring to or relating to planned or actual sexual encounters
with minors;

5.      Any address books, ledgers, mailing lists, membership list,
electronic organizers, or phone lists including, but not limited to those
containing names, addresses, phone numbers, e-mail addresses, screen names,
or monikers of other persons having similar interest in sexual relations
with minors;

6.    Computer generated printouts, graphics, documents, letters, data bases, pictures, lists, charts, or diagrams;

7.    Any sexually related toys or sex aids;

8.    Any photographic equipment including, but not limited to, still cameras, digital cameras, video cameras, camcorders, movie cameras, polaroid type instant cameras, lenses, tripods, flash units, light meters, lighting, backdrops, developing equipment, exposed film, unexposed film, video tapes, video cassettes, movie film, digital storage media (including diskettes, flashcards, and other media), photographic printers, slide projectors, movie projectors, screens, viewers, and light boxes;

And if you find the same or any part thereof, to hold such property in your possession

under California Penal Code Section 1536.

Given under my hand this 27nd day of May, 2003

JUDGE OF THE SUPERIOR COURT

Patricia Lucas

**FILED**

MAY 2 8 2003

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA

CSW32171

| | | |
|---|---|---|
| STATE OF CALIFORNIA | ) | AFFIDAVIT IN SUPPORT |
| COUNTY OF SANTA CLARA | ) | OF SEARCH WARRANT |

Personally appeared before the court this 27th day of May, 2003, I, JUAN

SERRANO, on oath, make complaint, depose and say that there is just,

probable and reasonable cause to believe, and that I do believe, that there

is now located at the following premises:

2990 Warm Springs Drive, San Jose, Santa Clara County, California, which premises is

described as followed;

A single-family dwelling located in a residential area of San Jose, on the south side of

Warm Springs Drive, East of Alpine Avenue and West of Challenger Avenue. There is

a red brick fireplace on the South/East side of the roof.  The residence has green

stucco exterior with white/yellow trim, a front door with a metal screen security door,

the address numbers 2990 displayed in large black metal lettering located on a white

wooden post on a dirt medium between the front sidewalk and the curbside with a sign

hanging indicating that this is an accounting specialist business.

 The numbers 2990 are also spray-painted on the front curb. There is a converted

garage with a white door in the center, yellow trim with a small, black metal plate sign

indicating that it is an office. Above this door is a cloth faded American flag. There is a

red abandoned Ford, Mustang California plates 1HWC447 in the driveway. There is a

large tree growing between the curbside and sidewalk in front of the residence.  AND,

any and all yards, garages, outbuildings, storage sheds, basements,

attics, crawlspaces, mailboxes, or trash containers assigned to, attached

to, or located on the above described property; for evidence of the commission of

felonies and public offenses to wit, violations of California Penal Code Sections 288(a)

(CHILD MOLESTATION),


FOR THE FOLLOWING PROPERTY:

Any and all documents or files, including documents stored in computer
readable form, stored images, video files, sound files, or other recordings
or depictions reflecting a person or persons under the age of 18 years
engaged in an act of sexual conduct as defined in CALIFORNIA PENAL CODE
§311.3;

Any and all documents or files, whether in hard-copy or computer readable
form, containing the names or other potentially identifying information of
persons under the age of 18 years with whom name of suspect has communicated
or who is depicted in an act of sexual conduct as defined in CALIFORNIA
PENAL CODE §311.3;


Any files or documents containing descriptions of sexual conduct with
persons under the age of 18 years;


Sexually explicit materials including but not limited to photographs,
magazines, magazine cutouts, motion pictures, video tapes, books, and
slides;


Any pornographic photographs or videos including but not limited to videos
depicting the defendant and/or other individuals involved in sexually
explicit acts;


Any name and address ledgers including but not limited to those containing
names, addresses, phone numbers or lists of persons who have similar sexual
interests;

Any name and address ledgers including but not limited to those containing names, addresses and phone numbers of victims, victims friends, or victims of other child molesters, athletic rosters and school rosters;

Photography equipment including but not limited to conventional still cameras, "Polaroid" brand cameras, video cameras, video recorders, lenses, tripods, stands, backdrops, exposed and unexposed film, video recordings and blank video tape or cassettes, film projection equipment, screens, viewers, slides, negatives, and photo processing equipment;

Any diaries or journals relating to sexual encounters with children;

Any children's toys including but not limited to books, videos, computer games and toys;

Any sexual aids including but not limited to marital aids, oils, lotions and condoms;

Indicia of personal property tending to establish the identity of persons in control of the areas searched such as: utility company receipts, rent receipts, mail and keys;

I am currently investigating violations of California Penal Code Sections 288(a) (CHILD MOLESTATION), 647.6 (ANNOYING/MOLESTING A CHILD), 311 (CHILD EXPLOITATION).

On 05/07/02, I was assigned this lewd and lascivious act case involving a female

juvenile under the age of 14 that had occurred between the years of 1997-2000. The
sexual assault took place at 2990 Warm Springs Drive San Jose, Ca, inside
SUSPECT Rodrigo Roy Hernandez' bedroom. For the purposes of this warrant,
the VICTIM will be referred to as V1.

According to the V1's Interview, the SUSPECT was dating her paternal
grandmother.

V1 stated that the SUSPECT began sexually assaulting her since she was
approximately 7 or 8 years old. She stated she remembers this age because
she was in the third grade. V1 stated she would be at her grandmother's
house when the SUSPECT would take V1 to the store. The SUSPECT would start
touching her legs and would gradually work up to her vagina. She stated that
the SUSPECT would sometimes undo her pants or place his hands under her
dress and fondle her vagina. She stated that sometimes the SUSPECT would
penetrate her vagina with one of his right hand fingers. She stated this
was ongoing and it occurred once or several times a week.

V1 also stated that the SUSPECT would then take her to his house where he
would force her to watch adult pornographic videos. V1 described in detail what
sexual acts the people in the video would engage in. V1 also stated that
the SUSPECT would then take off his clothing and begin masturbating in front
of her. She stated that the SUSPECT would then begin taking off her
clothing. She stated that the SUSPECT would encourage the VICTIM to perform
certain actions that were being shown in the pornographic videos, including oral sex
and masturbation. V1 stated that the SUSPECT would masturbate in front of her. V1

stated the SUSPECT would sometimes ejaculate and his semen would fall on her nude chest or on her clothed chest. V1 stated that she would wipe off the semen from her body with her own hands.

V1 stated that on approximately 5 different occasions, the SUSPECT would Orally copulate her. She stated that the SUSPECT would place his tongue on her vagina and would orally copulate her for approximately 2 minutes.

V1 stated that the SUPECT would also force her to orally copulate him. She stated that she did not want to do that, but the SUSPECT would tell her to open her mouth and persisted until she complied. V1 gestured to me how she would "gag" if the SUSPECT'S penis went too far into her mouth. V1 stated that she was forced to perform oral sex on the SUSPECT on approximately 5 different occasions.

V1 stated that the last assault took place sometime during the final days in 4th grade or the beginning school year of 5th grade. V1 stated that the same thing happened as before, but this time he attempted to place his penis into her vagina. She stated while she was on the SUSPECT'S bed, he jumped on top of her and placed his penis next to her vagina. V1 stated that the SUSPECT'S penis did touch her vagina. V1 stated that she felt pain when the SUSPECT did this because she felt as if her legs were too spread apart. She described the pain as if it was a "tearing pain." She stated that when the SUSPECT was on top of her attempting to place his penis into her vagina, his movements were in a "up and down" motion. V1 stated she would try to hit and kick the SUSPECT off of her and tell him to stop. V1 stated she felt the

SUSPECT'S penis was too big to penetrate her vagina.

V1 stated that the SUSPECT also photographed her with an unknown camera, in the nude on approximately four different occasions.

V1 described the SUSPECT'S bedroom having a bed, a bathroom, a closet with glass mirrors, a television up in a corner, some dressers on the side, and a dresser with an alarm clock, a telephone, and a widow above his bed with wooden blinds.

V1 stated that the SUSPECT did threaten to do harm to her grandmother if she said anything about the assaults, however she could not recall the exact threats. V1 stated she did not tell anybody about this because she was scared something would happen to her grandmother.

On 05/16/02, at 1530 hours, I conducted a pre-text telephone call where V1 called the SUSPECT at his home. During the conversation, the SUSPECT denied molesting V1 on more than one occasion. The entire version of the audio-recorded conversation is on file at the San Jose Police Department Sexual Assaults Investigations Unit and is available for further review. The following is a short summary of the conversation:

V1 confronted the SUSPECT, "so how come you made me do that anyway?" the SUSPECT responded by saying, "No I didn't" and became silent. The SUSPECT did not ask for V1 to specify as to what he made her do.

Throughout most of the telephone call, the SUSPECT was evasive by being silent, tampering with his telephone making the volume on his end very low, small denials, and became interested in the conversation when V1 described

she was sexually active with a school friend at 12 years old, a ruse.

V1: "The weird thing is I liked it so much, I might do it again."

SUSPECT: "Really?"

V1: "Like I said, that's not right cause I'm only 12 years old."

SUSPECT: "Did he please you?"

V1: "He got mad. He just you know, he came on me, on my chest just like you used to do, and I liked it and he got mad. (silence) Roy!" The SUSPECT then acknowledged he was still there.

On another part of the conversation, V1 spoke about fears of getting pregnant at her age and involved the SUSPECT as a possible participant as he was in the past. V1: What if we meet again, you know, me and you meet some day and it ends uphappening again? I mean I'm afraid. I mean would you use a rubber?" SUSPECT: "You know what, protected sex is the best kind of sex." V1: I mean, isn't there a chance that I could still get pregnant?" SUSPECT: I don't know. I think that 99% from the way that I hear it 99% chance that you won't." The SUSPECT then expressed to V1 he was not comfortable speaking on the telephone.

I, Juan Serrano, am a police detective employed by the San Jose Police Department, in San Jose, California. I have been a law enforcement officer in the State of California for 8 years. I have been assigned as an investigator in the Sexual Assault Investigations Unit of the San Jose Police Department since March

2002. I have been a Police Officer for the city of San Jose for over 4 years, and have prior experience as a Police Officer for the city of Gonzales for 4 years. I attended the San Jose Basic Police Academy in 1993, and I currently possess a POST Certificate. I am currently a Sexual Assaults Detective with the San Jose Police Department, working in the Bureau of Investigations Division. I have also received informal training from other experienced investigators, both from my agency as well as outside agencies. I have interviewed approximately 40 people that have been charged and convicted of Sexual Assaults specifically. I have interviewed or been part of interviews of over 70 suspects of Sexual Assaults and have questioned them regarding the manner in which they commit these crimes. I have interviewed or have been part of over 70 interviews of victims of Sexual Assaults ages ranging 2 years old to 86 years of age. I am thoroughly familiar with the manner in which many of these crimes are committed within the city of San Jose.

I have spoken to Detective Jeff Moore who is assigned to the Child Exploitation Detail and has training in Internet Crime, Child Pornography, Child Sexual Exploitation, and Child Molest Investigations. He has been employed as a San Jose Police Officer for 6 years. He has been assigned to the Child Exploitation Detail since March 2001. He has received over 100 hours of training since 2001 in the field of sexual abuse investigations. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ warrants. I provided Detective Moore with the facts of this investigation and he informed me of the following:

Some or all of the following characteristics are ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓y; who molest children, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓and who are ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓.

\* There are persons whose sexual objects are minors. They receive sexual gratification and satisfaction from actual physical contact with minors and from fantasy involving the use of pictures, other photographs or electronic media, and writings on or about sexual activity with minors;

\* These persons collect sexually explicit material consisting of photographs, magazines, motion pictures, videotapes, books, and slides which they use for their own sexual gratification and fantasy;

\* Such persons rarely, if ever, dispose of their sexually explicit materials, especially when they have taken the photographs or made the videotapes involved, as these materials are treated as prized possessions.

\* Most of such persons prefer contact with minors of one sex, as well as in a particular age or developmental range;

\* These persons engage in activities or programs, which will be of interest to the type of victims they desire to attract. "Fashion Photography" involving minor children is one common activity preying upon the common desire among under-aged children to become fashion models. Persons who engage in this particular method of exploitation usually use and possess a wide variety of photographic equipment to assist in the deception. Such equipment commonly includes conventional still cameras, "Polaroid" brand cameras, video cameras, video recorders, digital cameras, lenses, tripods, stands, backdrops, exposed and unexposed film, video recordings and blank video tape, or video cassettes, film projection equipment, screens, viewers, slides, negatives, and photo processing equipment;

\* Such persons go to great lengths to conceal and to protect their collections of illicit materials from discovery, theft, and damage. This includes use of locked storage facilities which may often be located apart from the residence;

\* These persons use sexually explicit materials, including those listed above for lowering the inhibitions of children, sexually stimulating children and themselves, and for demonstrating activity with children;

\*       These persons often correspond or meet with one another to share information and identities of their victims as a means of gaining status, trust, acceptance and psychological support;

\*       Often, these persons will cut pictures of children out of magazines, newspapers, books and other publications which they use as a means of fantasy relationships. These "cutouts" help to identify the age the sexual preference of victims by the person under investigation;

\*       These persons often collect, read, copy or maintain names, addresses, phone numbers or lists of persons who have similar sexual interests. These may have been collected by personal contact or through advertisements in various publications;

\*       These contacts are maintained as a means of personal referral, exchange and commercial profit. These names may be maintained in the original publication, in phone or note books, or merely on scraps of paper;

\*       The maintenance of diaries relating to sexual encounters by these persons with children is not uncommon. These accounts of their sexual experiences are used as a means of reliving the encounter when these persons have no children to molest. Such diaries might consist of notebooks, scraps of paper, formal diaries or computer entries in a home computer;

\*       The use of home computers is very common. It is known that the computer database will usually be encrypted. It takes an encryption expert to effectively decode the encryption which may taken several weeks of diagnostic testing to successfully break the code to gain access to the information. To attempt to do this at the location of the computer would lead to an undue interference with the place to be searched and would represent an undue interference with my other assigned duties;

\*       These persons attempt to reduce the risk of discovery by maintaining their own photo developing equipment, this includes use of modern state of the art instant development equipment, such as Polaroid, video recorders, digital cameras, etc., in addition they will patronize larger volume development labs or developing labs that deal strictly in hard-core adult pornographic material to avoid detection;

\*       These persons will maintain name, addresses, phone numbers, of victims, victims friends, or victims of other child molesters, athletic rosters and school rosters in the same manner as described above;

\*       These persons often collect, maintain photographs of children they are or have been involved with. These photos may depict children fully

clothed in various stages of undressing or totally nude, various activities,
not necessarily sexually explicit in nature;

\*        These persons using photos as described above as a means of reliving
fantasies or actual encounters with the depicted children.  These person
also utilize the photos as keepsakes and a means of gaining acceptance,
status, trust, and psychological support by exchanging, trading or selling
them to other people with similar interest.  These photos are carried and
kept by these persons as a constant threat to the child as blackmail and
exposure;

\*        These persons often use drugs as a means of inducement to get a
child into the particular location of the offender's home.  Alcohol is also
used in this fashion.  Both drugs and alcohol are used as a means of
seduction, reducing the child's inhibitions, and for sexual excitement;

\*        These persons often collect and maintain artifacts, statues,
paintings or other art media, which depict children or other young persons
in nude poses or sexual acts.  These are kept or left in places where the
victim can find or discovery them;

\*        These persons often keep and obtain things of interest to their
victims.  This may consist of magazines, books, and toys for the age level
of victims they desire to attract, and may be as complicated as video games,
toy train sets, and computers.

Based upon my training and experience, detective Moore's expertise and based upon

the statements taken from V1, the pre-text telephone conversation, and the reports of

nude photographs taken by the suspect of V1, I believe that evidence of possible

sexual interest of preadolescent children may be found and the above listed items.

I believe, that by virtue of my training and experience, and the

investigation in this case, as described herein, that evidence of the

commission of felonies and items used in the commission of felonies, to wit:

violation of California Penal Code sections 288(a) and 647.6, will be

located where described above.

Based upon the above facts, I request that a daytime search warrant be issued for the above location(s) for the seizure of said property and that the same be held under California Penal Code § 1536 and disposed of according to law.

Detective Juan Serrano

Subscribed and sworn to before
me this 27nd day of May, 2003

JUDGE OF THE SUPERIOR COURT
Patricia Lucas

THE FOREGOING INSTRUMENT IS
A CORRECT COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE
ATTEST: KIRI TORRE

MAY 2 8 2003

CHIEF EXECUTIVE OFFICER/CLERK
SUPERIOR COURT OF CALIFORNIA COUNTY OF SANTA CLARA
IN AND FOR THE COUNTY OF SANTA CLARA
BY _____ DEPUTY

| SUPP. REPORT | | | CASE NO. 02-126-9722 | |
|---|---|---|---|---|
| **SJPD** | JSE POLICE DEPARTMENT<br>201 W. Mission Street<br>San Jose, CA 95110  277-4261 | | | |
| REPORT TYPE<br>**288 (a) PC** | ☑ NARRATIVE | ☑ SUPPLEMENTAL | VICTIM LAST, First, Mid.<br>**Undisclosed** | |
| SUSPECT LAST, First, Mid.<br>**Hernandez, Rodrigo Roy** | | | SUSPECT ADDRESS<br>2990 Warm Springs Drive San Jose,  Ca | CITY/ZIP |
| PROPERTY (and/or NARRATIVE) | | | | |
| ITEM#   QNTY | ITEM TYPE BRAND MODEL # SIZE COLOR MARKS ETC. | | | SERIAL #    VALUE |

## CASE UPDATE:

## NARRATIVE:

On 05/29/03, at approximately 1300 hours, the San Jose Police Department METRO Unit assisted me in affecting a search warrant at 2990 Warm Springs Drive in San Jose, Ca. It should be noted that the basis for this warrant included V1's statement that S1 had taken several nude pictures of her. Also, V1 stated that S1 would make her watch pornographic movies prior to sexually assaulting her.

SAIU Sergeant J. Reyes #2000, Detective Thomason #2821, and I were at the scene. METRO Unit Sergeant M. Reyes #2147, and his METRO team made entry and secured the scene. I then went inside the residence where I gave S1 a copy of Search Warrant # CSW32171 signed by Superior Court Judge Patricia Lucas.

## COMMON AREAS SEARCHED AT 2990 WARM SPRINGS DRIVE:

While at the scene, I searched the areas common to S1 which include the following areas:

1. Work office, which consists of a converted garage used by S1 to conduct his accounting/tax preparation business.

2. S1's Master bedroom

3. Kitchen area

4. Living room

5. Hallway closet spaces

6. Unlocked storage shed with no front door located on the southwest corner of the property in the back yard.

## S1'S Work Office:

While searching S1's office, Detective Thomason asked S1 if there was anything in his office which may include nude pictures or pornography.   S1 then pointed to the top file drawer to the right of his desk and advised us he kept them there.

Upon inspection of the top file drawer, there was a locked box inside. We asked if there was a key to the box, at which point S1 advised us he had the key, and cooperated by opening the locked box. Inside the locked box were following:

| | **SJPD REPORT** | **OSE POLICE DEPARTMENT**<br>201 W. Mission Street<br>San Jose, CA 95110  277-4261 | **CASE NO.**<br>*02-126-9722* | |
|---|---|---|---|---|

| **REPORT TYPE**<br>288 (a) PC | ☐ **NARRATIVE** | ☐ **SUPPLEMENTAL** | **VICTIM  LAST, First, Mid.**<br>**Undisclosed** | |
|---|---|---|---|---|
| **SUSPECT  LAST, First, Mid.**<br>***Hernandez, Rodrigo Roy*** | | | **SUSPECT ADDRESS**<br>2990 Warm Springs Drive San Jose,  Ca | **CITY/ZIP** |

| | | **PROPERTY (and/or NARRATIVE)** | | |
|---|---|---|---|---|
| **ITEM#** | **QNTY** | **ITEM TYPE BRAND MODEL # SIZE COLOR MARKS ETC.** | **SERIAL #** | **VALUE** |

## CONTINUED... S1'S WORK OFFICE:

### LOCKED BOX:

- (Evidence tag # 2 ) Four untitled VHS cassette tapes

- (Evidence tag # 4) Miscellaneous nude pictures, and negatives of S1's fiancee, another woman, and himself. Some pictures displayed sexual acts between them.

**Note:** The propensity of S1's picture taking of nude females was displayed with over sixty pictures and miscellaneous negatives found in the locked box. Also, four untitled VHS videos were found in the locked box.

One of the Polaroid pictures found displayed a "younger" looking nude female (S1's fiancee) with a hand written date of 7/31/98, on the back. It should be noted that S1's fiancee's date of birth is 09/06/80 making her 17 years of age at the time the picture was taken.

S1 advised us that the untitled VHS videos found in the locked box contained film clippings of he and his fiancee gaging in sexual acts. He also stated that a portion of those clippings included sexual acts between he and his ex-wife. I later collected and bagged these items found as evidence.

## S1'S MASTER BEDROOM:

S1 advised us he and his fiancee share the residence's Master bedroom. He stated that he kept pornographic material in this room, but that it belonged to his fiancee. Upon inspection, following items were found inside the top drawer of a dresser chest, next to the foot of the bed of the Master bedroom.

- (Evidence tag # 1 ) Two pornographic VHS video tapes titled, "Old Men Younger Chicks," and "Rock That Young Ass."

S1 advised me that the pornographic movies found inside his bedroom were not his since they were inside his fiancee's dresser drawer. I later collected and bagged this item found as evidence.

## UNLOCKED STORAGE SHED/ BACK YARD:

In the back yard of this residence, I located a storage shed in the southwest corner within the fenced property line of 2990 Warm Springs Drive. The storage shed had no door, and its boxes and contents were in plain view. While inspecting this area, I located a covered blue plastic file box. The following item was located within this file box.

| **OFFICER'S NAME/BADGE**<br>**JUAN B. SERRANO #3543** | **DAYS OFF/SHIFT**<br>**Fri, Sat, Sun / Days** | **SUPERVISOR** | **2** |
|---|---|---|---|

**SJPD**~~REPORT~~

JOSE POLICE DEPARTMENT
201 W. Mission Street
San Jose, CA 95110  277-4261

| CASE NO. |
|---|
| *02-126-9722* |

| REPORT TYPE | ☒ NARRATIVE | ☒ SUPPLEMENTAL | VICTIM LAST, First, Mid. |
|---|---|---|---|
| 288 (a) PC | | | **Undisclosed** |

| SUSPECT  LAST, First, Mid. | SUSPECT ADDRESS | CITY/ZIP |
|---|---|---|
| *Hernandez, Rodrigo Roy* | 2990 Warm Springs Drive San Jose,  Ca | |

| | | PROPERTY (and/or NARRATIVE) | | |
|---|---|---|---|---|
| ITEM# | QNTY | ITEM TYPE BRAND MODEL # SIZE COLOR MARKS ETC. | SERIAL # | VALUE |

## CONTINUED...UNLOCKED STORAGE SHED/ BACK YARD:

• (Evidence tag # 3 ) One 110mm camera with a film cartridge still inside the camera.

I later collected and bagged these items found as evidence. The yellow, carbon copy of the search return/receipt was given to S1 displaying items 1, 2, 3, and 4.

## S1'S STATEMENT (PROPENSITY OF TAKING PICTURES OF NUDE FEMALES):

I advised S1 I wanted to talk to him in reference to some of the items found. I advised him that I was not going to ask him any questions regarding the V1, but rather only questions pertaining to the items found today.

Prior to the interview, I started recording with my audio-cassette recorder without S1's knowledge. S1 then came into the kitchen area and was about to sit down when he asked me if he could go to the bathroom to relieve himself. I then allowed S1 to use his restroom. After this, we began the interview.

I advised S1 once again I was going to ask him questions completely different from those I had asked  him in our st interview. I told him that prior to me asking him any questions, I wanted to read him his rights.

### S1 UNDERSTANDS MIRANDA AND UNDERSTANDS HE IS NOT UNDER ARREST:

I then read S1 his rights per Miranda verbatim, as per my department issued Miranda rights card. After each sentence/right, S1 advised me he understood each right by saying, "Yes."

**It should be noted that I did advise S1 he was not under arrest, and that he was going to be able to leave, and conduct business as usual with his clients as soon as we left the premises. I asked S1 if he understood he was not under arrest and he stated that he did.**

I then advised S1 I wanted to ask him about several pictures I had found and he said, "Sure." I asked him when was it that he met his future wife (fiancee).  He stated it was four years ago in July or August. He stated she had a business then.

### S1 DENIES KNOWLEDGE FIANCEE  WAS 17 WHEN HE TOOK FIRST NUDE PICTURE:

I asked S1 how old his fiancee was the first time he began dating her and he said, "Around her birth day. Cause I found out you know, that she was having a birthday, but she didn't tell me how old she was you know, I just found out that she was having a birthday." I asked S1 how old she was the first time they were romantically involved, and S1 said, "On her birthday."

| OFFICER'S NAME/BADGE | DAYS OFF/SHIFT | SUPERVISOR | 3 |
|---|---|---|---|
| **JUAN B. SERRANO #3543** | **Fri, Sat, Sun / Days** | | |

| SUPD REPORT | SAN JOSE POLICE DEPARTMENT 201 W. Mission Street San Jose, CA 95110 277-4261 | CASE NO. 02-726-9722 | |
|---|---|---|---|
| REPORT TYPE **288 (a) PC** | ☐ NARRATIVE ☐ SUPPLEMENTAL | VICTIM LAST, First, Mid. **Undisclosed** | |
| SUSPECT LAST, First, Mid. **Hernandez, Rodrigo Roy** | | SUSPECT ADDRESS 2990 Warm Springs Drive | CITY/ZIP San Jose, Ca |

| PROPERTY (and/or NARRATIVE) | | | |
|---|---|---|---|
| ITEM# QNTY | ITEM TYPE BRAND MODEL # SIZE COLOR MARKS ETC. | SERIAL # | VALUE |

## S1'S STATEMENT (PROPENSITY OF TAKING PICTURES OF NUDE FEMALES):

### CONT….S1 DENIES KNOWLEDGE FIANCEE WAS 17 WHEN HE TOOK FIRST NUDE PICTURE:

I asked if it was on the day of her birthday and he stated that it was. I asked S1 if he crossed his number seven, and he stated that he did. I then showed S1 a Polaroid picture of his fiancee and turned it around so that he could see the handwritten date on the back. I asked S1 if this was his writing and he said, "Yes."

### S1 ACKNOWLEDGES TAKING AND DATING THE POLAROID PICTURE OF 17 YR OLD FIANCEE:

I then asked S1 to read the date displayed on the back of the Polaroid picture, and he said, "July thirty-first, ninety eight." I asked if the girl on the picture was his girlfriend (fiancee) and he said., "Yes." I asked S1 if he took this picture, and he said, "Yes."

I asked S1 if he was romantically involved with his fiancee during the picture in question and he said, "No, I just took the picture." I asked, "In the nude?" S1 answered, "Yes." S1 acknowledges he took both Polaroid, and 35mm pictures of V1 during the time of her birthday in 1998.

. stated he could not remember how many pictures he has taken of his fiancee during the day of her birthday (18th birthday). I then showed S1 a pile of nude pictures of his fiancee and asked him when he took those pictures. S1 said, "On her birthday."

I then asked S1 if it was true that he likes taking pictures of nude women and he said, "Mmmm… no, its not." I asked S1 if he likes taking pictures of women he is romantically involved, and he said, "Yeah, well, with their permission. I just don't take pictures of anybody, no. I don't do that."

I asked S1 how long he had known his fiancee prior to taking the first nude picture, and he said, "Mmmm, uhm, uhm, a month I guess. I'm not too sure." I asked S1 if it was fair to say that he met her in June and he said, "July, or early July."

At this point, S1 said he wanted his attorney present. S1 said, "The way it sounds like, it doesn't sound too cool." I asked S1 what made him say that and he said, "I don't know. The question seems to be misleading as to the situations here. They say the picture tells a story or something like that. Sometimes a picture doesn't tell a good story."

I then ended this interview with S1 at 1555 hours.

## CONTINUED NARRATIVE:

or to leaving the premises of 2990 Warm Springs Drive, I assured S1 had the following documents in his

| OFFICER'S NAME/BADGE **JUAN B. SERRANO #3543** | DAYS OFF/SHIFT **Fri, Sat, Sun / Days** | SUPERVISOR | 4 |
|---|---|---|---|

| **SJPD REPORT** | | OSE POLICE DEPARTMENT<br>201 W. Mission Street<br>San Jose, CA 95110  277-4261 | CASE NO.<br>**02-126-9722** | |
|---|---|---|---|---|
| REPORT TYPE<br>**288 (a) PC** | ☒ NARRATIVE | ☒ SUPPLEMENTAL | VICTIM  LAST, First, Mid.<br>**Undisclosed** | |
| SUSPECT  LAST, First, Mid.<br>**Hernandez, Rodrigo Roy** | | | SUSPECT ADDRESS<br>2990 Warm Springs Drive San Jose, Ca | CITY/ZIP |
| PROPERTY (and/or NARRATIVE) | | | | |
| ITEM#   QNTY | | ITEM TYPE BRAND MODEL # SIZE COLOR MARKS ETC. | | SERIAL #   VALUE |

## CONTINUED NARRATIVE:

possession.

- The signed copy of the Search Warrant #CSW32171
- The copy of the Search Warrant Return / Receipt of items taken.

At approximately 1640 hours, Detective Thomason and I took to the items seized and booked them into central supply as evidence.

On 06/02/03, I took went to signed the Items 1, 2, and 4 out of evidence for further inspection. I then viewed all VHS tapes (6 tapes) entire contents and found the following.

### Evidence Item #1:

 Porn videos titled "Old Men Younger Chicks," and "Rock That Young Ass." The cover depicts young looking women in the nude, having sex with older looking men. In the initial scene of the title, "Old Men Younger Chicks," an older looking man is portraying a father with his teen-age daughter telling him about how her day went.

The adult female actor playing the roll of the daughter then engages in sexual intercourse with the male subject. The sexual activity includes both oral, and vaginal/penile intercourse.

The second title, "Rock That Young Ass," the cover depicts young looking women in the nude, having sex with older looking men. The contents of the film displayed men and women having oral, penile/anal, and vaginal/penile sexual intercourse. No obvious scenes portraying teen aged looking girls were seen.

### Evidence Item #2:

Three of the four untitled VHS home video cassettes contained copies of the same sexual acts between S1 and his fiancee. On all three tapes, there are scenes where there is a time stamp of "August 1st, 1998."

On one tape, the time stamp is found on the 47:48 minutes and on the 1:15.48 hour of the tape. On this tape the date is also "August 1st, 1998, with a time of 1250 hours, then a second scene at 2027 hours. This tape has a painted four leaf clover type picture and what looks like a letter "G" in white paint on the title bar behind the cassette. This date stamp would place S1's fiancee as at 17 years of age.

There are two other copies of this cassette recorded in different order. All three VHS cassettes displayed S1 recording the scenes where he and his fiancee were engaging in both penile/mouth, vaginal/mouth oral sex, and  ile/vaginal sexual intercourse between S1 and his fiancee.

| OFFICER'S NAME/BADGE<br>**JUAN B. SERRANO #3543** | DAYS OFF/SHIFT<br>**Fri, Sat, Sun / Days** | SUPERVISOR | 5 |
|---|---|---|---|

| SJPD REPORT | SE POLICE DEPARTMENT<br>201 W. Mission Street<br>San Jose, CA 95110  277-4261 | CASE NO.<br>02-426-9722 | | |
|---|---|---|---|---|
| REPORT TYPE<br>288 (a) PC | ☐ NARRATIVE    ☐ SUPPLEMENTAL | VICTIM LAST, First, Mid.<br>**Undisclosed** | | |
| SUSPECT  LAST, First, Mid.<br>*Hernandez, Rodrigo Roy* | | SUSPECT ADDRESS<br>2990 Warm Springs Drive | CITY/ZIP<br>San Jose,  Ca | |
| PROPERTY (and/or NARRATIVE) | | | | |
| ITEM#    QNTY | ITEM TYPE BRAND MODEL # SIZE COLOR MARKS ETC. | | SERIAL #    VALUE | |

## CONTINUED NARRATIVE:

### CONTINUED EVIDENCE ITEM #2:

The fourth VHS video cassette displays S1 with an unknown adult woman closer to his age engaging in various sexual acts. I all videos, S1 was careful that the camera was always pointing to ensure good footage of the sexual acts. S1 would constantly turn his head towards the camera to ensure it was recording.

### EVIDENCE ITEM #3:

On 05/29/03, at 1635 hours, I took out the film inside the 110mm camera, and had it developed for possible pictures of evidentiary value. On 06/02/03, I received the pictures and none had any exposures displaying nudity or recognizable subjects involved in this case.

### EVIDENCE ITEM #4:

Over 60 pictures and negatives displaying S1's fiancee in the nude, S1's ex-wife in the nude, and S1. (See statement of S1)

I later logged all evidence back to central supply.


** It should be noted that upon entry on the search warrant, S1, S1's fiancee, and one client were present. Both the fiancee and client were released at the scene**

Name:  Sholly, Rose (S1's fiancee)
    DOB:  09/06/80  CDL # B7318507
    Address:  2990 Warm Springs drive




## END OF CASE UPDATE

OFFICER'S NAME/BADGE
**JUAN B. SERRANO #3543**
     DAYS OFF/SHIFT
     **Fri, Sat, Sun / Days**
     SUPERVISOR
     6

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA
SAN JOSE FACILITY
COMPLAINT FOR ARREST WARRANT(S)
RODRIGO VASQUEZ HERNANDEZ, APN385

**ENDORSED**

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

vs.

RODRIGO VASQUEZ HERNANDEZ (3/13/1948), 1K,
   aka RODRIGO ROY V. HERNANDEZ,
2990 WARM SPRINGS DR, SAN JOSE, CA

Defendant(s)

FELONY COMPLAINT

DA NO: 030614445
CEN
\* RH WARR

**F I L E[**

JUN 4  2003

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court County of Santa Clara
BY _____ MONICA PRADO DEPU

**PROTECTIVE ORDER**

The undersigned is informed and believes that:

### COUNT 1

On or about and between January 8, 1997 and December 31, 2000, in the County of Santa Clara, State of California, the crime of AGGRAVATED SEXUAL ASSAULT OF A CHILD UNDER 14 AND 10 OR MORE YEARS YOUNGER THAN THE DEFENDANT, in violation of PENAL CODE SECTION 269, a Felony, was committed by RODRIGO VASQUEZ HERNANDEZ who did commit a violation of Penal Code section 261(a)(2) (RAPE) upon Jane Doe , a child who was seven, eight, nine, ten,  years old and who was both under the age fourteen (14)years and ten and more years younger than the defendant.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.  A felony conviction of the offense requires that the defendant provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand pursuant to Penal Code section 296(a).

# P.C. 1048 PRIORITY

## COUNT 2

On or about and between January 8, 1997 and December 31, 2000, in the County of Santa Clara, State of California, the crime of AGGRAVATED SEXUAL ASSAULT OF A CHILD UNDER 14 AND 10 OR MORE YEARS YOUNGER THAN THE DEFENDANT, in violation of PENAL CODE SECTION 269, a Felony, was committed by RODRIGO VASQUEZ HERNANDEZ who did commit a violation of Penal Code section 289(a) (SEXUAL PENETRATION BY FOREIGN OBJECT) upon Jane Doe, a child who was seven, eight, nine, ten years old and who was both under the age fourteen (14)years and ten and more years younger than the defendant.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290. A felony conviction of the offense requires that the defendant provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand pursuant to Penal Code section 296(a).

### REQUEST FOR TRIAL PRIORITY PURSUANT TO PENAL CODE § 1048

The case charged above falls within the provisions of Penal Code section 1048, and the People therefore respectfully request that the case be given the trial priority provided by that section.

### NOTICE AND STATEMENT OF PROBABLE CAUSE FOR AIDS TESTING

Complainant alleges that the official reports and documents of a law enforcement agency attached to this document and incorporated by reference establish that there is probable cause to believe that a transfer of bodily fluids from the defendant, Rodrigo Vasquez Hernandez, to a victim has occurred within the meaning of Penal Code section 1524.1 and/or Health and Safety Code sections 121055 and 121060.

You are notified that, if at the conclusion of the probable cause hearing the magistrate determines that the requirements of Penal Code section 1524.1, and/or Health and Safety Code sections 121055 and 121060 have been met, the defendant will be ordered to submit to a blood test to detect the AIDS antibody and/or other communicable diseases as provided by statute.

Further, attached and incorporated by reference are official reports and documents of a law enforcement agency which the complainant believes establish probable cause for the arrest of defendant RODRIGO VASQUEZ HERNANDEZ, for the above-listed crimes. Wherefore, A WARRANT OF ARREST IS REQUESTED.

Complainant therefore requests that the defendant(s) be dealt with according to law.

I certify under penalty of perjury that the above is true and correct.

Executed on June 4, 2003, in SANTA CLARA County, California.

Warrant received for service by:

on_____

Cash or Bond $_____

Serrano 3543
(Sun 2831 )
SJPD (408) 277-4102 021269722 S
BROWN/ D248/ FELONY/ dg

_____

JUDGE OF THE SUPERIOR COURT

ATTACHMENT

C

Name Rodrigo Hernandez V54637 (B1-546)

Address Salines Valley State Prison

P.O. Box 1050

Soledad, Ca. 93960-1050

CDC or ID Number V54637

ORIGINAL

MAR 29

By

Superior Court of Appeal State of California

Sixth Appellate District - Family Division

(Court)

| | |
|---|---|
| Rodrigo Hernandez | PETITION FOR WRIT OF HABEAS CORPUS |
| Petitioner | |
| vs. | H031360 |
| People of State of California | No. _____ |
| Respondent | *(To be supplied by the Clerk of the Court)* |

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

- [✓] A conviction
- [✓] A sentence
- [ ] Jail or prison conditions
- [ ] Parole
- [ ] Credits
- [ ] Prison discipline
- [✓] Other (specify): Family and regular visits with sons and family

1. Your name: Rodrigo Hernandez

2. Where are you incarcerated? Salinas Valley State Prison

3. Why are you in custody? [✓] Criminal Conviction  [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon"). Alledge sexual assault on a child (Rape, oral copulation, sexual penetration with a foreign object); distribution of harmful matter to a minor; sexual misconduct

b. Penal or other code sections: 269(261(a)(2); 289(a); 288(a); 311.4; and 288.2

c. Name and location of sentencing or committing court: Superior Court County of Santa Clara State of California, San Jose, Ca. 95110

d. Case number: CC 315300

e. Date convicted or committed: June 29, 2004

f. Date sentenced: September 09, 2004

g. Length of sentence: 45 years to life

h. When do you expect to be released? December 24, 2036

i. Were you represented by counsel in the trial court? [✓] Yes.  [ ] No. If yes, state the attorney's name and address:
Traci Owens - Public Defender  120 W. Mission San Jose, Ca. 95110

4. What was the LAST plea you entered? *(check one)*
[✓] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?
[✓] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Ineffective Assistance from Counsel

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

During trial and sentencing phrase, my attorney failed
to properly investigate and call witnesses available.
One witness in particular was Dr. Dee Shaffer, a Forenstic
Clinical Psychologist who examined me in jail.

b. Supporting cases, rules, or other authority (optional): See A.

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

See Attachment A. (continuedd).
1. U.S. Const, Amendments 4th, 6th, 9th and 14th.

7. Ground 2 or Ground ___2___ _(if applicable)._

Denial of family visit with sons ages 7 and 4

a. Supporting facts:

I am permitted visits with my domestic partner and family. The visiting area is full of families with children The area is adequately supervised.

On September 2005, I was assigned to the position of Teacher Assistant. That appointed granted me Al-A privileges. This privilege included family over night visit, if I get permission from Family Court and is in the best interest of the family. The alledged victum is not related to me. nor am I seeking permission to visit with her. My sons were not the alledge victums.

I have earned all my priviledge by my conduct, my work position, and my willingness to re-habitate myself.

My sons are 7 and 4 year olds who wish to have father-son relationship. I am humbly requesting family and regular visits with my sons. and

b. Supporting cases, rules, or other authority:

Welfare and Institution Code Section 362.6 Penal Codes Sections : 1202.05; 5054; 5054.2; 5058; 5058.3 Title 15 Dept. of Corrections Rules and Regulation Article 7 section 3170 (a) Ground 3 of 3 See ATTACHment B.

MC-275 [Rev. July 1, 2005]                **PETITION FOR WRIT OF HABEAS CORPUS**                Page four of six

8. Did you appeal from the conviction, sentence, or commitment?  ☑ Yes.  ☐  No.  If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

Sixth Appellate Court of Appeals

b. Result Stay P.C section 288.2; denial on others  c. Date of decision: June 24, 2006

d. Case number or citation of opinion, if known:  H 02 7 9 5 5

e. Issues raised: (1) Trial Court err· admitting uncharged misconduct

(2) Prosecuting misconduct

(3) Court err in sentencing petitioner to Consecutive sentences

f. Were you represented by counsel on appeal? ☑ Yes.  ☐ No. If yes, state the attorney's name and address, if known:

Lori Quick · Sixth Appellate Program · 100 N. Wincester Suite 310 Santa Clara, Ca · 95051

9. Did you seek review in the California Supreme Court? ☑ Yes ☐  No.  If yes, give the following information:

a. Result reviewed denied pending Cunningham v Cal b. Date of decision: August 23, 2006

c. Case number or citation of opinion, if known:  S145236

d. Issues raised: (1) Trial Court err admitting uncharged misconduct

(2) prosecution misconduct

(3) trial court err- sentencing (4' Penal Code Section 667.6(b)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:  No communication with attorney and reason obtained information regarding family visits and other privileges

11. Administrative Review:

a. If your p...  ...n concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust admini...  ...ve remedies may result in the denial of your petition, even if it is otherwise meritorious. (See In re Muszalski (1975) 52 C...  ...3d 500 [125 Cal.Rptr. 286].)  Explain what administrative review you sought or explain why you did not seek such revie...  N/A

b. Did you seek the highest level of administrative review available?  ☐  Yes.  ☑  No.
Attach documents that show you have exhausted your administrative remedies.

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☑ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: Court of Appeal - County of Santa Clara, San Jose

(2) Nature of proceeding (for example, "habeas corpus petition"): habeas corpus petition

(3) Issues raised: (a) Violation of Knock-announce rule

(b) Court err in deciding for the state c. ineffective counsel

(4) Result (Attach order or explain why unavailable): Pending decision

(5) Date of decision: N/a

b. (1) Name of court: Superior Court of Appeal, County of Santa, San Jose

(2) Nature of proceeding: direct appeal

(3) Issues raised: (a) request to be transfer Federal Institution

(b) ineffective counsel

(4) Result (Attach order or explain why unavailable): decision pending

(5) Date of decision: N/A

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
N/a

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
Ineffective assistant of counsel; new information obtained.

16. Are you ,ntly represented by counsel? ☐ Yes. ☑ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☐ No. If yes, explain:
motion to suppress denial/ineffective counsel; Knock-Announce violation; and U.S. Supreme Court petition

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
Ordered by Court Clerk see letter dated February 21, 2007

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: March 26, 2007                              ▶

(SIGNATURE OF PETITIONER)

MC-275 [Rev. July 1, 2005]          PETITION FOR WRIT OF HABEAS CORPUS          Page six of six

1  RODRIGO HERNANDEZ V54637 (B2-146)

2  SALINAS VALLEY STATE PRISON

3  PO Box 1050

4  SOLEDAD, CA. 93960-1050

5  ATTORNEY, PRO SE

6

7          SUPERIOR COURT OF APPEAL STATE OF CALIFORNIA

8          COUNTY OF SANTA CLARA - FAMILY DIVISION

9

10 | In re:                          | NO.

11 | Rodrigo Hernandez               | PETITION FOR WRIT OF HABEAS CORPUS

12 | On. Habeas Corpus               | AND MEMORANDUM OF POINTS AND

13 |                                 | AUTHORITIES IN SUPPORT THERE OF.

14

15                            I.

16                    INTRODUCTION

17      1.   Petitioner was convicted on five Counts. Count One,

18 two, and three were under Penal Code section 269. Count One,

19 Penal Code section 261, subdivision (a)(2); Count Two, Penal Code

20 section 289, subd. (a); Count Three, Penal Code Section 288(a).

21 and Count Four, Penal Code section 288.2 subd. (2) and Count

22 Five, Penal Code section 311.4 subd.(C). (1CT 199-203, 207)

23      2.   On September 09, 2004, petitioner was

24 sentenced to consecutive term of 15 to live for each of

25 Count One, two, and three; the midterm of two years for

26 Count Four; and One-third the midterm of for Count

27 Five, for a total of 45 to live (2 CT 393-398)

28      3.   On June 14, 2006, On appeal in the Sixth

1.

Appellate District, the Court order the judgement be modified to stay the two-year sentence on Count Four, (Sixth Appellate District case No. H027955 (Santa Clara County, Superior Court. No. CC 315300) but found admission of uncharged accusations, 30 years before, prosecutions misconduct were "harmless." idid.

4. During trial, defense counsel failed to call any witnesses available, including an expert witness in Dr. Dee Shaffer, a forenstic Clinical Psychologist who had tested petitioner. In effect providing no substantial defense that led directly to a guilty verdict.

5. Defense attorney failed to interview and investigate petitioner illnesses and injuries suffered in Viet Nam.

6. Defense attorney lack of preparation and investigation because of budget cuts as counsel stated denied petitioner and children any father-son relationship as they were not alledge victims.

7. Petitioners maintains that the results of ineffective assistant tof counsel, proper investigation, lack of prepareness, unknowledgeable of Welfare Codes and Penal Codes deprived petitioner of Constitutional privileged rights.

## II

## PARTIES

8. Petitioner, Rodrigo Hernandez, is 59 years old, an a prisoner of the State of California presently incarcerated at Salinas Valley State prison, under Dr. care

2

for Post Traumatic Stress Disorder (PTSD), extreme back pain, severe case of feet fungus, and alcholism all obtained while serving in Viet Nam, as well as Type II diabetes, high cholesterol, and high blood pressure.

9. People of California

## III

## STATEMENT OF FACTS

10. The defense attorney was the third public defender appointed for the petitioner. Ms. Owens took over three months prior to trial. Only 15 minutes of face to face conversation took place. That conversation took place while attorney had finish interviewing another client. Other face to face interviews were prior trial dates.

11. Lack of any fruitful interviews nor calling witnesses as requested by petitioner and who were available to testify, as well as myself during trial and during sentencing phrase.

12. Lack of investigating Penal Code Sections regarding Viet Nam Veterans, Visits, and Welfare and Institution Codes, denied petitioner andy family relation rights.

13. Children of the petitioner are suffering from father-son relationship.

14. Defense attorney continues to be ineffective by not providing zetitioner with documents, trial court transcripts, and official reports after numerous requests by. petitioner.

## IV

## CONTENTION

3

Duty of Counsel and LACK OF EFFECTIVENESS
DEPRIVED PETITIONER OF RIGHTS.

## V.

### REQUEST FOR RELIEF

Petitioner is without remedy save for habeas Corpus,
According, petitioner prays the court.

1. Issue a writ of habeas corpus;
2. Issue an order to Show Cause;
3. Declare the rights of the parties
4. Reverse conviction;
5. Immediate release of petitioner;
6. Appoint Counsel or award reasonable attorney's fees;
7. Grant any and all other relief found necessary or appropiate;
8. Restore petitioner all rights and privileges

Dated March 15, 2007

Rodrigo Hernandez

4

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

## INTRODUCTION

United States citizens are guarantee specfic rights. Rights of innocence until proven guilty, right to counsel, right of a fair trial and right for life, liberty or property. (U.S. Const. Amends 4th, 6th, 9th, 14th) These rights did not come easy. Many persons died defending these rights. I too, have the honor of fighting for these rights as a U.S. Marine in the Viet Nam War.

Any wrongful abuse or neglect of these rights is truly a disgraceful disregard to those who gave their lives and those who served defending those rights. Such is the case now being presented.

The prosecution, State, has the burden of prove by way of "factual" evidence, to convince a jury of peers of the defendant, did in fact, commit alledge charges against petitioner. Without evidence, it is extremely difficult for the prosecution to gain a guilty verdict.

The defedant, without proper investigations, witnesses, and competent counsel will in doubtably be convicted. Appointed Public Counsel failed in all aspects mention above. (See Attachment ___ )

Lack of funds because of budget cuts should not be an issue for pasper investigation.

# I

RESPONENT CONTINUES TO CONFINE
PETITIONER DESPITE OBVIOUS U.S.
CONSTITUTION VIOLATIONS and Welfare
Code and Penal Code statues.

Petitioner was convicted and sentence to a term of 45 to life. The assistant of ineffective counsel most certainly contribute to petitioner conviction.

Our legal system is not perfect. Guilty people are found innocent. In the same sense, innocent people are wrongfully convicted. Such is the case now before you. Our legal system provides steps to correct any injustice. That decision is now yours to make.


## CONCLUSION

For the reasons stated above, petitioner is entitled to reversal of his conviction, immediate release from prison. At the very lease, grant permission to petitioner for family visits, transfer to a Federal Institution, return to court for a new trial, release on reasonable bail, pending appeal decision.

Dated March 26, 2007

Rodrigo Hernandez

6.

# ATTACHMENT A

Ground One (b)

Supporting Cases, rules, or authority

# Ground for Relief

b. Supporting cases, rules, or authority

1. U.S. Const. Amendments:
   A. Fourth
   B. Sixth
   C. Nineth
   D. Fourteen

2. Cal. State Const.
   A. Articles I sections:
      ① One
      ② Seven (a)
      ③ Fifteen

3. Strick v Washington; 466 U.S. 668 104 S.Ct. 2574, 91 L.Ed 2d 305 (1986)

4. Kimmel v Morrison, 477 U.S. 365, 106 S.Ct 2574, 91 L.Ed 2d 305 (1986)

5. Brown v Myers, 137 F.3d 1154 (9th Cir 1998)

6. William v Taylor, 527 U.S 362, 396-99 (2000)

7. Bullock v Carver, 297 F.3d 1036, 1047-48 (10th Cir) 2002

8. Pavel v Hollins, 261 F.3d 210, 228 (2nd Cir 2001)

9. Towns v Smith, 395 F.3d 251, 258-60 (6th Cir 2005)

10. Henry v Poole, 409 F.3d 48, 65-67 (2nd Cir 2005)

11. Glover v Miro, 262, F.3d. 268, 276 (4th Cir 2001)

12. Carter v Bell, 218 F.3d 581, 596 (6th Cir 2000)

13. Gallego v U.S., 174 F.3d 1196, 1197 (11th Cir 1999)

14. Rompilla v Beard, 125 S.Ct. 2456, 2460 (2005)

15. Roe v Flores-Ortega, 528 U.S. 470, 483-84 (2000)

16. Hudson v Hunt, 235 F.3d 892, 896-97 (4th Cir 2000)

17. Williams v Washington, 59 F.3d, 673, 679-83 (7th Cir 1998)

10.

Ground for Relief  1 of 3

· b. - Continue

    18. U.S. v Sandoval-Lopez, 409 F.3d 1193, 1197-98 (9th Cir 2005)

    19. Holsomback v White, 133 F.3d 1382, 1385-89 (11th Cir 1998)

    20. Hart v Gomez, 174. F.3d 1067, 1673 (9th Cir 1999)

    21.

# ATTACHMENT

# B

Ground 3 of 3

Ground 3 of 3

. To Be transfer to a Federal Institution

a. Supporting facts.

Petitioner counsel failed to propertly consult with petition or discuss probation reports during sentencing phrase.

b. Supporting cases, rules or other authority.

1. People v Amerson (1984, 2nd Dist) 151 Cal App 3d 165, 198 Cal Rptr 678, 1984 Cal App LEXIS 1537

2. People v Lara (1984, 3rd Dist) 155 Cal App 3d 570, 202 Cal Rptr 262, 1984 Cal App LEXIS 2008)

3. People v Rudy (1988, 4th Dist) 204 Cal App 3d 462, 251 Cal Rptr 339, 1988 Cal App Lexis 836.

4. People v Bruhn (1989, 1st Dist) 210 Cal App 3d 1195, 259 Cal Rptr 6 1989 Cal App LEXIS 510

5. Penal Code Section 1170.9